# MARSHALL STONE

*v.*

# JOHN A. COOK.

1. EVIDENCE—*affidavit of party inconsistent with present claim competent against him.* Where a party filed a petition for letters of administration on his father's estate, in which he stated, on oath, that the deceased left property and effects and a homestead of nineteen and one-half acres, and afterwards filed a bill claiming to be the owner of the real estate described in the petition, by virtue of a verbal contract with his father in his lifetime, it was proper, on the hearing, to permit the sworn petition for letters of administration to be read in evidence, subject to such explanatory evidence tending to weaken its effect as the complainant might produce.

2. It was not necessary in such case that the petition should have the effect of a complete estoppel, to entitle it to be received in evidence; it was sufficient that it had a tendency to show that the subsequent claim of complainant was made in bad faith.

3. WITNESSES—*statute in relation to interested parties, construed.* Each of the causes enumerated in the second section of the act in regard to evidence and depositions in civil cases, in force July 1, 1872, as disqualifying any party or person interested in the result of a suit as a witness therein, stands by itself, and the exceptions therein contained apply to such of them as they are at all applicable to separately, in the order they are stated.

4. The intent of the law is that no person directly interested, etc., shall be allowed to testify where the adverse party sues or defends as the executor, administrator, heir, legatee or devisee of any deceased person, except as to facts occurring subsequent to the death of the deceased; to those he may testify; but if the adverse party sues or defends as guardian or trustee for such heir, legatee, or devisee, then the additional restriction is imposed, that such facts shall have occurred not only subsequent to the death of the deceased, but also after such heir, legatee or devisee shall have attained his or her majority.

5. NOTICE—*possession of land not inconsistent with rights of others, not notice of claim under verbal contract.* During the lifetime of the owner of a tract of land, his son, who was a man of family, resided with him on the land, and after the death of the father the son continued to reside there; there was evidence that the possession of the son during the lifetime of the father was in subordination to the father's title: *Held,* that such possession by the son was no notice of any claim he might

have, by verbal agreement between him and his father, as against a purchaser in good faith and for value from another child and heir of the father.

APPEAL from the Circuit Court of Kendall county; the Hon. SILVANUS WILCOX, Judge, presiding.

Messrs. ELDRIDGE & LEWIS, and Mr. J. HALE FOWLER, for the appellant.

Messrs. BROWN & SOUTHWORTH, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant filed his bill in the court below alleging, in substance, that in 1855 Whitman Stone and Freelove, his wife, being seized of nineteen and one-half acres of land, particularly described, entered into a verbal agreement with appellant, whereby he was to clothe, support, provide for and pay all their expenses, during their lives; and in consideration thereof, they were to make and deliver to him a warranty deed to the land, and also sell and deliver to him all their personal property, which property was then by them delivered to him, as was also possession of the land, as part performance of the contract on their part; that appellant has held uninterrupted possession of the land and goods and chattels ever since the making of the agreement, and that he has made improvements of value on the land. It is further alleged that the agreement has been fully performed by appellant; that Whitman and Freelove died intestate, leaving appellant and one Hannah Carr their only children and heirs at law; that in February, 1873, Hannah Carr made a pretended sale of her undivided half interest in the land to appellee, and executed to him a deed for the same; that such sale and deed were fraudulent, and made with intent to defraud appellant of his rights under his contract with Whitman and Freelove Stone; that no consideration passed from

appellee to Hannah Carr on account thereof, or if he paid anything, he did so knowing that appellant claimed and was in possession of the premises as sole owner; and that appellee holds the legal title to said half of the premises in trust for appellant.

Hannah Carr and appellee are made defendants, and required to answer under oath. Bill prays that appellee be required to convey to appellant.

Hannah Carr answered, but during the progress of the trial the bill was dismissed as to her.

Appellee answered under oath, alleging that he bought the interest in the land of Hannah Carr about a year before, and paid her $300 in cash; that he then had no notice, and did not suppose appellant had, or claimed, any right to Hannah Carr's interest in the land; that he bought in good faith, and took a deed from her and her husband; that the land joins appellee's farm, upon which he lived before and at the time of Whitman Stone's decease; that he frequently conversed with said Whitman and his family about their affairs, and they never informed or intimated to him that said Stone had agreed to sell, or had sold his property, or any part thereof, to appellant, as claimed in his bill; that if there had been such an agreement or sale, appellee believes he would have been informed of it. He denies the making of improvements by appellant, except some slight repairs of fences, and some small and cheap out-sheds, not exceeding $50 or $100 in value. He further alleges, that when appellant went on the premises he had no property, except a little clothing and furniture; that he had a wife and large family of children with him; that he also took with him his wife's sister, who likewise had several children; that the father, Whitman Stone, took them all in, and chiefly supported them as long as he lived—at least did as much toward supporting them as appellant did toward supporting him and his wife; that three or four years after they went there to live, appellant's wife died, leaving a large family of children, and Freelove Stone

took care of them for several years, and brought them up. He denies, on information and belief, that appellant ever made any agreement relative to the land, or bought the premises, as alleged in the bill; denies that he ever took possession of it, but alleges that he went on it to live with his father, and that his father managed and controlled the farm, and did more toward supporting his son than his son did toward supporting him and his wife; alleges that after Whitman Stone's decease, appellant's mother, Freelove Stone, for most of her life, did more toward supporting him than he did toward supporting her. He also sets up and relies upon the Statute of Frauds. He also further alleges that, in May, A. D. 1872, appellant filed his petition, under oath, in the probate court of Kendall county, for letters of administration on the estate of Whitman Stone, in which he states that said Whitman died in July, 1857, leaving property and effects in said county, and leaving real estate consisting of a homestead, containing nineteen and one-half acres, worth at his decease $300, and at the time of filing the petition, $1000; that the land mentioned in the petition is the same as that mentioned in appellant's bill. He charges, on information and belief, that appellant filed his claim for the support and maintenance of his said parents, in the said probate court, after administration was had of the estate of Whitman Stone, amounting to $1000.

Replication was filed to the answer, and the cause was heard on bill, answer and proofs, upon which the court decreed that appellant's bill be dismissed.

The first point made under the errors assigned is, that the court erred in rejecting appellant as a witness to prove the contract made between him and his father in regard to the land.

It is provided by the second section of the "act in regard to evidence and depositions in civil cases," in force July 1, 1872, as follows:

"No party to any civil action, suit or proceeding, or person

directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, where any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely:

"1st. In any such action, suit or proceeding, a party or interested person may testify to facts occurring after the death of such deceased person, or after the ward, heir, legatee or devisee shall have attained his or her majority." 2 Gross, 150.

It is argued, inasmuch as Hannah Carr was of age when the contract between appellant and his father was made, the case is brought within the exception, and appellant was a competent witness. This does not accord with our understanding of the statute. We understand that each of the enumerated disqualifying clauses stands by itself, and that the exceptions apply to such of them as they are at all applicable to separately, in the order they are stated. And, therefore, the intent is, no person directly interested, etc., shall be allowed to testify when the adverse party sues or defends as the executor, administrator, heir, legatee or devisee of any deceased person, except as to facts occurring subsequent to the death of the deceased, and as to those he may testify; but if the adverse party sues or defends as guardian or trustee for such heir, legatee or devisee, then the additional restriction is imposed, that such facts shall have occurred not only subsequent to the death of deceased, but also after such heir, legatee or devisee shall have attained his or her majority. The manifest purpose of the act is, that parties in interest shall be allowed to testify only where they are on terms of

comparative equality; and this would be defeated by any other construction than that we have given.

The next point urged is, that the petition for letters of administration was improperly received in evidence. This is not tenable. It is not necessary that it should have the effect of a complete estoppel to entitle it to be received as evidence. If it tended to show that appellant's claim was urged in bad faith it was competent, and that it had this tendency is beyond controversy. It can hardly be accepted as a sufficient excuse for a false affidavit, that a party legally responsible for his acts was advised by counsel to make it. But apart from this, the evidence was competent, subject to such explanatory evidence tending to weaken its effect as appellant was able to produce.

As to the remaining points, we think the evidence is not with appellant sufficiently to sustain the allegations of his bill. It was incumbent on him to clearly and satisfactorily prove his contract, and his compliance with it, as he has alleged in his bill. A careful examination of the record leaves us unsatisfied that he has done so.

Appellee is a purchaser in good faith, for full value, and without notice of appellant's claim—for appellant's possession during his father's lifetime is not shown to have been of that exclusive character necessary to justify the belief that it was not in subordination to his father's ownership; and since his father's death, it was not inconsistent with his ownership of the undivided half of the premises as tenant in common.

We think appellee is entitled to protection in his purchase, and that the decree should not be disturbed.

The decree is affirmed.

*Decree affirmed.*