## St. L., I. M. & S. R'y v. Leigh.

1. RAILROADS: Passenger without seat refusing to pay and ejected.
   It is a part of the contract between a railroad company and its passengers to provide them seats; but a passenger cannot ride on the train and refuse payment, or surrender of his ticket, for want of a seat; and, if ejected for such refusal, he cannot recover for the ejection, but may for breach of the contract in not furnishing him with a seat, and recover the proximate damages resulting from such breach, just as though he had disembarked of his own will.

Appeal from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.

*Dodge & Johnson* for Appellant.

The defense, in this action, contended for these principles, namely:

1st. That, under the statute, to entitle a person to ride on defendant's railway train, he must do one of two things; he

St. L., I. M. & S. R'y v. Leigh.

must either pay his fare to the proper officer (the conductor), or he must have provided a ticket and deliver up the same when demanded.

To have the ticket is not sufficient, and there is no exception to this rule.

2d.   If a person procures a ticket, and gets upon a crowded train and fails to find a seat, he cannot continue to ride upon the train standing, and refuse to pay his fare or to give up his ticket until a seat is furnished.   Such a rule cannot exist in the nature of things, because on its face it is wrong and unjust.

Plaintiff should either have offered to pay the conductor in money the value of carriage from Little Rock to Malvern, a distance of fifty miles, in a standing position, or he should have gotten from the defendant's train at the first station, and brought his action against the defendant for any damages he might have suffered by reason of the delay ; or he should have paid his fare or given up his ticket, and when he reached his destination have sued the carrier for any damages, inconvenience or suffering, which he might have experienced by reason of being compelled to ride in a standing position the entire or part of the distance.

Ordinary fairness would suggest, that if he did so he must make *some sort* of compensation.   There is no law which permits him to ride even a mile, and standing up, " free gratis," without the consent of the carrier.   Such a thing as waiving the complete and literal fulfilment of a contract is not an uncommon thing in the business world. · Such a thing as accepting a partial performance, and seeking redress for the deficiency, is no less common.

*Mr. Thompson,* in his work upon *Carriers of Passengers, p. 67,* says :  " It is undoubtedly the duty of the carrier to provide passengers with seats, and they cannot be left standing without a breach of the contract of carriage ; therefore, a passenger

23———45

may decline to surrender his ticket until he has been furnished with a seat. But he cannot do this and remain upon the train. *He should quit the train at the first suitable opportunity, and bring his action upon his contract. He cannot insist on riding in a standing position until a seat becomes vacant."*

See also, *Davis v. K. C., St. J. & C. B. R. Co., 53 Mo., 320, 421; Hancraft v. G. N. R'y, 8. E. L. Eq., pp. 364–5; L. & I. R. R. Co. v. Simmons, 27 Ind., 16; Gordon v. R. R., 42 N. H., 602–5; Bass v. R. R., 35 Wis., 465; Mansf. Dig., Sec. 5474.*

*C. B. Moore* for Appellee.

The questions involved in this case are simply these:

(*a*) Was appellant bound to surrender his ticket, until he had been furnished with a seat?

(*b*) Was the conductor justified, under the circumstances as detailed in the evidence, in ejecting him from the train?

Passengers are entitled to seats; they are included in the accommodations required by statute. *Mansf. Dig., Sec. 5475; 32 Barb., 406; 34 N. Y., 670.* And it is the duty of the officials of the train to see that they have them. *36 Wis., 461.*

If the railroad had not room, and could not furnish seats, "it should not have contracted to carry him, and if it was uncertain whether he would have the necessary room, he should have made his contract conditional, with reference to the uncertainty." *Hutchinson on Car., Sec. 69; 8 Eng. L. & Eq., 362; 28 Ind., 441.*

If a passenger chooses to accept of a passage without a seat, the general understanding undoubtedly is that he must pay fare. *But if he goes upon the cars expecting proper accommodations, and is put off because he declines going in that mode, he may still resort to his action. Redfield on Railways, 4 ed., p. 257.*

St. L., I. M. & S. R'y v. Leigh.

See *Davis v. R. R., 53 Mo., 317, 320; Hutchinson on Carriers, Sec. 609, p. 485.*

COCKRILL, C. J. The contract between the passenger and the railway company upon which a ticket without qualification is issued, is by implication to the effect that the company will perform its whole duty as a carrier. Among these duties is that of furnishing the passenger the usual and reasonable accommodations for his comfort to the destination named in his ticket. This includes not only sufficient room, but also a seat in the usual mode of conveyance. *Hutchinson on Car., Sec. 609; Thomps. on Car., p. 67; 2 Rorer on R. R., pp. 968–9.* *1. RAILROAD: Duty to furnish seats to passengers.*

The holder of the ticket agrees that he will conform to the reasonable rules and regulations of the company, and among others, that he will surrender his ticket to the company's agent on demand after embarking on his journey under it. The conditions of this contract are not subject to division, so as to apportion the component parts. It is not within the power of either party to sever the terms of the contract, and demand a performance of the whole, while he, himself, complies with a part only. The carrier cannot claim a surrender of the ticket upon a proffer by it of transportation alone, because the contract calls for transportation in a seat. The passenger cannot avail himself of the benefit of the transportation offered him under his contract, and at the same time withhold from the carrier the effective evidence of the payment of his fare, *i. e.*, the ticket. If he desires to repudiate the contract on his part, he must do so *in toto.* He cannot appropriate its benefits and get rid of its burdens. *1 Whart. Cont., Secs. 233, 552.*

When the carrier proffers transportation without a seat, and the passenger refuses to surrender his ticket, what is then the attitude of the parties under the contract? It is simply this: *Passenger without seat must pay, etc.*

St. L., I. M. & S. R'y v. Leigh.

The carrier has offered the passenger less than his contract calls for and the passenger has refused it in satisfaction. This he has the unquestioned right to do. If he is not accommodated in a manner which may be deemed a fair compliance with the duty of the carrier, he may decline any compromise and resort to his action against the company for refusing to carry him as their contract or their duty requires. But he cannot accept the part that is offered him in lieu of the whole —that is the transportation without the seat—and at the same time refuse to comply with his own undertakings, in this any more than in another contract. Upon the carrier's neglect or refusal to comply with the terms of the contract of carriage, without a just excuse, the passenger is at liberty to treat the contract as violated by the company, and he may leave the train and sue for a breach of the contract.

It is not necessary to enter upon the determination, in this case, of the question whether he may not remain upon the train on compliance with the reasonable regulations of the company, without waiving his right to recover damages, under the contract, for the inconvenience of riding without a seat. However that may be, if he chooses to accept passage without a seat he must pay the fare for it. *2 Redf. R'y, p. 257 (See VII., Sec. 198;) Benj. on Sales, Sec. 690.* If he goes on the train expecting to receive the accommodation he has contracted for, and is put off because he declines to deliver his ticket or pay fare without receiving the full measure of what he is entitled to under his contract, he may maintain his action upon the contract and recover any damages that are the proximate result of its breach, just as though he had disembarked of his own will. But if he is ejected without unnecessary force or violence because of his refusal to pay for his ride, the carrier has done nothing more than it has the legal right to do, and no recovery can be had for the ejection. *Davis v. Railroad, 53 Mo., 317; Thompson on Car., p. 67; 2 Rorer Railroad, pp. 968–9; Redf. R'y, sup.*

The case was tried in the circuit court solely as an action of tort, and the recovery was had upon the theory that the appellant had been unlawfully expelled from the train, the court instructing the jury that the company could not lawfully expel him if they " knowingly received him as a passenger, and then failed to furnish him a seat." This, as we have seen, was error.

The judgment must be reversed and the cause remanded for a new trial.