## PENNSYLVANIA CO. v. PAUL.

(Circuit Court of Appeals. Sixth Circuit. November 3, 1903.)

No. 1,190.

1. CARRIERS OF PASSENGERS—INJURIES TO PASSENGER—RIDING ON CAR PLATFORM—CONTRIBUTORY NEGLIGENCE.

Riding on a platform of an overcrowded railroad car is not negligence per se, and where the passenger's ticket was good only for a certain train, and the evidence was conflicting as to whether the railroad company provided sufficient train sections and sufficient carriages for the accommodation of the crowd, the question of contributory negligence in riding on the platform was properly submitted to the jury.

2. SAME—INSTRUCTIONS—PROXIMATE CAUSE.

Where, in an instruction in an action by a passenger for injuries, the court states that the negligence relied on is that at a certain point there was a sudden jerk or lurch imparted to the train, sufficient to throw the passenger therefrom, it is not necessary to add, "thus causing the injury."

3. SAME—AMOUNT OF RECOVERY.

Where, in an action for death, the court states that under the statute of Ohio an administrator may recover up to the amount of $10,000, and then, after describing the elements of damage which may be considered, instructs that, if the jury find for plaintiff, their verdict should be "in the amount as I have indicated to you," and in summing up this part of the charge adds that the jury should find "an amount that will make good the widow and next of kin for the pecuniary loss that they have suffered," etc., the instruction is not objectionable as requiring a verdict for $10,000.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Carey & Mullins, for plaintiff in error.

Welty & Albaugh, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action brought by the administrator of the estate of Joseph Ess, deceased, to recover damages for the death of Ess through the alleged wrongful act of the defendant railroad company. The case was submitted to a jury, and a verdict for $10,000 recovered, which the court, upon a motion for a new trial, refused to set aside. It is now brought here for review.

It appears from the proof that on the night of October 29, 1900, there was a political meeting at Alliance, Ohio. The Pennsylvania Company ran special or excursion trains to Alliance for this meeting; among others, three trains from Canton and one from Massillon, two stations west of Alliance. Joseph Ess was the leader of the Massillon Band, and in that capacity attended the meeting. The ticket bought for him was dated October 29th, and provided for a first-class passage from Massillon to Alliance and return, the return trip to be commenced leaving Alliance "not later than special train October 29,

¶ 1. Injuries to railroad passengers while occupying positions other than regular seats, see note to St. Louis, I. M. & S. Ry. Co. v. Leftwich, 54 C. C. A. 4.

See Carriers, vol. 9, Cent. Dig. § 1377.

1900." A great crowd attended the meeting, and after it was over gathered at the station to take the trains home. Ess marched to the station with the band. No separate train was provided for the Massillon people. The first train or section which drew up to the station headed for the west was announced for Maximo, Louisville, Canton, and Massillon. It was at once filled with people, who crowded the seats, aisles, platforms, and steps, some even climbing on top of the cars. Those on top were compelled to get off, and efforts were made to induce those on the platforms to step down, but without avail. Thus overloaded, the first train or section pulled out; and the second, containing 14 cars, pulled up. The same announcement was made that the train was for Maximo, Louisville, Canton, and Massillon, and it also was soon filled to overflowing, the seats, aisles, platforms, and steps being crowded. Ess boarded this train along with other members of the band. The proof did not show what car he took, or what place upon the car he secured. The train stopped at Louisville, about five miles east of Canton, and a number of passengers got off. At this station, Ess came walking along the platform, and was called by Ertle, a witness, to get upon the steps of the front platform of one of the cars with him and others. This he did, and, taking the only space unoccupied, sat upon the next to the lower step on the left side of the front platform, with his feet on the lower step. His position was next to the hand rail on the end of the car, another man sitting upon the same step between him and the body of the coach. Hurford, a witness, who was standing next to Ess, and leaning with his back against the hand rail, testified that when Ess took his seat he threw his right arm around this rail, and with the other held his band instrument.

There was testimony going to show that the train ran at a moderate rate of speed from Alliance to Louisville; then at a high rate of speed until it approached the target near a bridge crossing a small creek east of Canton, where it slowed up. After passing the target, and as the car upon which Ess was riding was crossing the bridge, there was a violent lurch or jerk of the car, caused by the sudden increase of the speed of the train, and Ess fell or was thrown off the car, and was crushed and killed. A witness who saw the remains testified that all the joints of the right arm were dislocated—"pulled out of joint," "stretched out"—from which it was argued that Ess was violently thrown from the train by the jerk or lurch of the car at a time when, to protect himself, he had hold of the rail to his right.

On behalf of the administrator it was contended that the railroad company was guilty of negligence, first, in permitting the train to leave Alliance overcrowded, so that Ess was compelled to ride on the platform; and, second, in running this overcrowded train in a careless manner, so that a jerk or lurch was given the car sufficient to throw Ess off to his death. On the other hand, it was insisted, in the first place, that the railroad company was not liable for the overcrowded condition of the train, because it did everything it could to prevent it, having on hand at Alliance cars and trains enough to provide all return passengers with seats, of which it gave them notice; and, in the second place, that, if Ess was thrown off the car by the

alleged jerk or lurch (which it denied, insisting that he did not have hold of the rail, was possibly asleep, and fell off), it was the result of his own fault; that he was guilty of contributory negligence in riding on the platform, and his administrator could not recover. There was testimony on the part of the railroad company tending to show that sufficient trains and cars were on hand at Alliance to carry all the excursionists home without riding upon the platforms, and that the employés of the railroad company protested against the overcrowding of the trains, notifying the passengers that, if they waited, ample accommodations would be provided. On the other hand, testimony was introduced tending to show that there was no genuine effort on the part of the railroad company to prevent the overcrowding, or to clear the platforms, or to notify Ess and others that there would be another train for Massillon; so that, in taking the crowded train and riding upon the platform, Ess, in view of the provision of his ticket, only did what any prudent man would have done under similar circumstances.

1. In view of the conflict of testimony, the court submitted the entire case to the jury. Respecting the claim of the railroad company that it was not responsible for the overcrowding of the train, the following charge was given:

"In that connection I say to you, if the jury find that the defendant had provided a sufficient number of coaches and trains to accommodate all persons desiring to ride from Alliance to the various points west, including Massillon, and had taken reasonable means to announce this fact to persons wishing to take this train, it would not be guilty of negligence in permitting the train upon which Joseph Ess was riding to leave Alliance station in the crowded condition in which the testimony shows the train to have been."

With respect to the claim that Ess was guilty of contributory negligence, the court charged:

"It is claimed by the defendant that it was negligence in Ess to take this train at all in its overcrowded condition, because he had knowledge that there was another train. In considering that question, you must put yourself in the place of Joseph Ess, as far as possibly you can, from the evidence which you believe. You may take into consideration the time of night, and the stipulation in the ticket that it was not good beyond the special train, October 29, 1900. You must consider in that connection whether or not Joseph Ess had notice such as he was called upon to believe and rely upon that there was another train, with sufficient room in it, upon which he could ride, and upon which his ticket would be good. If you find that Ess was brought to Alliance upon one train, before he could be charged with negligence for not having taken another train than the one he came upon you must find that the railroad company took such steps that he had actual knowledge, upon which he might rely, that there was another such a train; that there was not a duty devolving upon Ess, simply because he found the train upon which he got at Alliance was crowded, to wait for other transportation upon the sole presumption that other transportation would be furnished."

We think the court was right in leaving the question of contributory negligence to the jury. R. R. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; R. R. v. Harmon's Adm'r, 147 U. S. 571, 580, 13 Sup. Ct. 557, 37 L. Ed. 284; B. & O. R. R. Co. v. Meyers, 10 C. C. A. 485, 492, 62 Fed. 367. A railroad company is bound to furnish passengers reasonable accommodations inside its cars. Usually it does so, and therefore standing or sitting upon the platform or steps

of a car when in motion is ordinarily held to be contributory negligence sufficient to bar a recovery. But if a railroad company fails to provide accommodations inside its cars, so that a passenger is forced to take to the platform, the company may be held liable for injuries received by him while riding there. Whether the circumstances are such as to excuse his riding there may be a question for the jury. Riding upon the platform of an overcrowded car is not per se a negligent act. 2 Wood on R. R. § 308, and cases cited; Graham v. Manhattan Ry. Co., 149 N. Y. 336, 43 N. E. 917, citing Willis v. Long Island R. R., 34 N. Y. 670; Chicago & Alton R. R. Co. v. Fisher, 141 Ill. 614, 31 N. E. 406; B. & O. R. R. Co. v. Meyers, 10 C. C. A. 485, 62 Fed. 367; Trumbull v. Erickson, 38 C. C. A. 536, 97 Fed. 891.

2. With respect to the claim that the company was negligent in running the overcrowded train so as to cause the violent lurch or jerk, which it was insisted threw Ess from the car and caused his death, the court charged the jury as follows:

"The railroad company, in pulling out a crowded train, assumed the duty of carrying passengers on that crowded train in such a way that danger should not come to any of those passengers from any act or omission reasonably within the control of the railroad company. Because the danger was greater, the care should have been greater. And that the railroad company assumed, when they pulled out a train upon which there were passengers on the platforms and on the steps, to so conduct that train as to keep those people upon the steps and upon the platforms as safely as the reasonable management of the train under those circumstances would permit. It is charged then further by the plaintiff that the act of negligence in conjunction with the crowded condition of the train which occasioned the death of the plaintiff's decedent was that at a certain point a short distance east of Canton there was a sudden jerk or lurch imparted to the train sufficient to throw Ess from the train. That is a question of fact for you, gentlemen. You have heard the testimony: First, whether there was such a jerk or lurch to the train; next, what occasioned it; third, whether or not that jerk or lurch, by reasonable care exercised in the situation, could have been omitted by the engineer, or by whomsoever had charge of the conduct of the train. The question for you to determine primarily in this case is whether that was negligence, and a breach of duty towards Joseph Ess."

It is now urged that there was error in this charge, because it omitted "the vital element that the jerk must have been the proximate cause of the injury." We fail to perceive the omission. The charge states distinctly that the act of negligence relied on was that "at a certain point a short distance east of Canton there was a sudden jerk or lurch imparted to the train sufficient to throw Ess from the train." It was not necessary to add, "thus causing the injury which resulted in his death." The charge states with sufficient clearness that the jerk complained of was alleged to be the proximate cause of the injury.

3. The final objection to the charge is that the court, after stating that under the statute of Ohio an administrator may in such a case "recover up to the amount of $10,000," and, after describing the elements of damage which might be considered by the jury in arriving at their verdict, instructed the jury, in the event of a conclusion favorable to the plaintiff, that their verdict should be for the plaintiff "in the amount as I have indicated to you." Since the verdict was for the amount of $10,000, it is insisted the jury may have been misled by the instruction, and understood the court to charge that, if they found a

verdict for the plaintiff, they must find it in the amount of $10,000. We do not think the language is fairly open to this construction. The judge, in concluding his charge, did not tell the jury that, if they found for the plaintiff, their verdict should be in the amount he had "stated," but in the amount he had "indicated." The reference was clearly to the description he had given of the elements of damage proper to be considered by the jury, and more especially to the summing up of that part of the charge where he says that, if they find in favor of the plaintiff, they should find in their verdict "an amount that will make good the widow and next of kin for the pecuniary loss that they have suffered by reason of the death of the husband and father."

We find no error in the record, and the judgment of the Circuit Court is therefore affirmed.