LEWELLEN C. LANE v. CHOCTAW, OKLAHOMA & GULF RAILROAD
COMPANY.

(Filed September 5, 1907.)

(91 Pac. 883.)

1.    PLEADING—Amendment—Status of Superseded Petition—Con-
tents as Evidence.   Where an amended petition is filed in a
cause, and no part of the original petition is referred to or
adopted into the amended petition, such original petition is
superseded, and is no part of the record, and, while it may be
introduced in evidence by the adverse party the same as any
other writing signed by the party, subject to be explained, its
contents cannot be considered upon the trial either as a part
of the record or as admissions of the plaintiff, unless introduced
in evidence.

2.    CARRIERS—Passengers—Personal Injuries—Pleading Rules and
Regulations.   Where the plaintiff sues a carrier of passengers for
injuries alleged to have been received by him by the negligence
of the carrier while riding on a baggage car, the carrier must
plead its rules and regulations relating to passengers and where
they may ride, and allege the violation thereof by the plaintiff,
if it desires to avail itself of such a defense.

3.    SAME—Contributory Negligence.   It is not, under our statutes,
negligence per se for a passenger on a mixed railroad train to
occupy a seat in a baggage car.

4.    SAME—"Proper Accommodations."   It is the duty of a carrier of
passengers for reward to provide fit and suitable accommoda-
tions for all the passengers that it receives and attempts to
transport, and "proper accommodations" means seats such as
are usually provided and in use in a vehicle intended for the
transportation of passengers.

5.    SAME.   A carrier of passengers for hire is not allowed to over-
crowd its vehicles or cars, and a passenger who goes upon a
train for passage is not negligent in occupying a position in the
baggage compartment of a combination car, where there are no
unoccupied seats in the passenger compartments or coaches.

6.    SAME.   In order to absolve itself from liability for injuries to a
passenger riding in its baggage car, the carrier must adopt and
post in a conspicuous place in its passenger cars printed rules
and regulations forbidding or warning passengers not to ride in
such baggage car, and must, in addition to such notices, provide

such passenger with proper accommodations in the passenger cars.

7. **SAME—Questions for Jury.** Where a carrier is operating a mixed train, and a passenger goes upon such train with his ticket for passage and finds no vacant seats in the passenger cars, or there are no printed rules posted in the passenger coaches in such train, warning passengers not to ride in baggage cars, it is not negligence for such passenger to take a seat in a baggage car; and the questions of whether the train was overcrowded or the rules posted, if controverted, are questions for the jury and not the court.

8. **TRIAL—Directing Verdict—Error, When.** Where there is a material controverted question of fact upon which reasonable minds might fairly come to different conclusions, it is error for the court to direct a verdict

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; before B. F. Burwell, Trial Judge.*

Reversed and remanded.

*Blackeney & Maxey* and *W. B. Crossan,* for plaintiff in error.
*C. B. Stuart* and *Thos. R. Beman,* for defendant in error.

STATEMENT OF THE CASE.

The plaintiff in error, L. C. Lane, commenced his action in the district court of Pottawatomie county against the Choctaw, Oklahoma & Gulf R. R. Co. for the purpose of recovering damages for injuries alleged to have been caused by the negligence of the denfendant's servants in the operation of a railway train upon which he was a passenger in May, 1902. The Choctaw, Oklahoma & Gulf Railroad Company was at the time a common carrier of freight and passengers by steam railway between the stations of Tecumseh ·and Shawnee, in Pottawatomie county, Oklahoma, as well as to other points both north and south of said stations. On the day of the alleged accident the company was operating a mixed train, composed of different cars for passengers, baggage, and freight, and the plaintiff purchased a ticket at the railway station of Tecumseh, and at the proper time boarded the train

with a number of other passengers, and, observing no unoccupied seat in the compartments intended for passengers, went into a compartment used for transporting baggage and took a seat upon a box therein located. The car in which he took passage was a combination car, one portion or end of which was regularly provided with seats for passengers, and the other portion or end was used for baggage. There was a door opening between the two compartments. The train started north from Tecumseh station towards Shawnee, and the plaintiff and several other passengers were occupying the baggage compartment of the combination car. Whether there was a separate passenger coach in the train, in addition to the combination coach, was a disputed question of fact on the trial, there being evidence both ways on the subject. The train ran about a quarter of a mile and then stopped; the engine was detached from the train and ran on to a switch where it picked up three or four freight cars, either flat or box, conveyed them onto the main line and coupled them to the cars containing the passengers. When the engine backed up with the freight cars attached to make the coupling onto the passenger cars, it is claimed that they were struck with such speed and force as to pitch the plaintiff off the box upon which he was seated, thereby causing certain injuries to one of his limbs which developed into such a diseased condition as to require his leg to be amputated, and for his suffering, loss of limb, expense of sickness, and treatment he brings this action, based upon the alleged negligence of the railway company in operating its train. The amended petition sets out the facts specifically and at length. The company answered by a general denial, coupled with an averment, in general terms, of contributory negligence on the part of the plaintiff. The plaintiff replied by general denial. The case was tried to a jury, and after all the evidence was introduced by both sides the court directed a verdict for the defendant, and entered judgment of nonsuit. The plaintiff brings the cause here. on petition in error.

Opinion of the court by

BURFORD, C. J.: We are advised that the trial court held, as a matter of law, that by going into the baggage compartment and riding there the plaintiff was guilty of such negligence *per se* as would prevent a recovery of damages. Preliminary to a discussion of this question, there are some questions of practice which arose upon the trial that should be settled.

The plaintiff filed an original, a first, and second amended petition. In the original petition it is averred that the train upon which plaintiff took passage was a mixed train, composed of one passenger coach, one combination passenger and baggage coach, several box or freight cars, and a locomotive. In the amended petitions the averment is made that the train consisted of one combination passenger and baggage car, certain freight cars, and one locomotive. It is stated in the brief of plaintiff in error that the trial court, in deciding the case, held that the averment in the original petition that there was a passenger coach in the train was an admission by the plaintiff against his interest, and was conclusive against him and not subject to explanation or controversy. The original pleading was not introduced in evidence. The rule stated is one that applies to the pleadings upon which the case is submitted for trial. In the case of *Lane Implement C. v. Lowder and Manning,* 11 Okla. 61, 65 Pac. 926, this court, in discussing a similar question, stated the law to be that "where a party to an action makes solemn admissions against his interests in a pleading, in the absence of mistakes on his part or on the part of his counsel who inserted them in such pleading, a court, in passing upon the sufficiency of a subsequent amended pleading filed by him, should take such admission into consideration and treat them as admitted facts in the case." No authority is cited supporting this rule. It is probably stated too broadly, and is subject to some modification. The rule as stated *supra* is correct as applied to an amendment to a pleading, but the general rule is that an original pleading is superseded and its

effect as a pleading destroyed by filing an amended pleading which is complete in itself and does not adopt any of the former pleading by reference. 1 Enc. Pl. & Pr. 625. In any case a distinction should be made between an admission and an allegation. One is in the nature of a confession of a fact averred by the adverse pleader; the other is an averment against the adverse pleader, which must be supported by proof. The authorities are not at all harmonious as to the effect to be given upon the trial to superseded pleadings. A few courts, and principally California, seem to have adopted the rule that a pleading which has been withdrawn by an amended pleading cannot be considered for any purpose on the trial; it being considered unjust to hold a party bound by statements which may have been inserted by inadvertence or mistake, and which he has voluntarily abandoned by filing a new pleading. *Barber v. Reynolds,* 33 Cal. 497; *Kelly v. McKebben,* 54 Cal. 192; *Mecham v. McKay,* 37 Cal. 154; *Ponca v. McElvy,* 51 Cal. 222; *Kentfield v. Hays,* 57 Cal. 409; *Pfister et al. v. Wade et al.,* 10 Pac. 369. But such superseded pleadings may be used for impeachment purposes when relevant. *In re O'Conner Estate,* 118 Cal. 69, 50 Pac. 4. In *Smith v. Pelott et al.,* 18 N. Y. Supp. 301, it was held that upon the trial the averments of the superseded pleadings could be considered, whether introduced in evidence or not; but this rule has but little support. The weight of authority and better reasoned cases support the rule that a pleading or an admission or allegation in a pleading, notwithstanding it may have been withdrawn, stricken out or superseded by an amended pleading, is competent in evidence, and may be introduced against the party from whom it proceeded, like any other admission or declaration, subject, however, to explanation by the party who made it. This rule rests on the general principle that whatever a party has said about his case may be proved against him, and whatever writing he has signed or authorized may be, if relevant, introduced against him, the weight of such evidence to be left to the court or jury trying the case.

Abbott's Trial Brief (2nd Ed.) pp. 296, 297; *Solomon Ry. Co. v. Jones,* 30 Kan. 601, 2 Pac. 657; *Reill v. Likowski,* 33 Kan. 515, 6 Pac. 886; *Jockers v. Borgman,* 29 Kan., 109; *Brown v. Pickard,* 4 Utah, 292, 9 Pac. 537; *Kilpatrick D. G. Co. v. Box* (Utah) 45 Pac. 629; *Barton v. Laws,* 4 Colo. App. 212, 35 Pac. 284; *Schad v. Sharp,* 95 Mo. 573; *Stone v. Cook,* 79 Ill. 424; *Hall v. Woodward,* 30 S. C. 564; *B. & O. & C. R. R. Co. v. Evarts,* 112 Ind. 533; *Ludwig v. Blackshere,* 102 Iowa, 366; *Jeneau v. Stunkle,* 40 Kan. 756, 20 Pac. 473; *Walser v. Wear,* 141 Mo. 443; *Woodworth v. Thompson,* 44 Neb. 311; *Strong v. Dwight,* 11 Ab. Pr. N. S. (N. Y.) 319; *Willis v. Tozer,* 44 S. C. 1; *Goodbar Shoe Co. v. Sims* (Tex. Civ. App.) 43 S. W. 1065; *Or. R. R. & Nav Co. v. Ducres.* 1 Wash. 195, 23 Pac. 415; *Linder v. St. Paul F. & M. Ins. Co.,* 93 Wis. 526; *Daub v. Engleback,* 109 Ill. 267; *Folger v. Boyington,* 67 Wis. 447; *Vogel v. Osborn,* 32 Minn. 167. In this case the superseded petition was not introduced in evidence, and its contents were not proper to be considered, either as admissions of record or as evidence in the case. The rights of the parties should have been determined upon the averments contained in the pleadings upon which the cause proceeded to trial, regardless of any former pleadings, unless properly offered and admitted in evidence.

Another question of practice relates to the question of pleading. The defendant, prior to the trial, asked for leave to file an amended answer, in which the company alleged compliance with the statutory regulations requiring rules and regulations to be posted in the passenger cars, and the violation of such rules by the plaintiff. This plea was in the nature of confession and avoidance, or by way of justification. The court refused the request to file the amended answer, and the case went to trial upon the issues made by the defendant's general denial and plea of contributory negligence, which was denied by the plaintiff. Upon the trial, the court, over the objection of the plaintiff, permitted the defendant to offer evidence tending to show that it had

posted on the baggage room door a warning, and that the company had issued to its trainmen printed regulations relating to the prevention of passengers riding upon the platform and in baggage cars. This evidence was not admissible under the issues formed, and it was error to admit it. It has been held that, in order to entitle the carrier to make the defense that it has adopted and promulgated rules and regulations which the passenger has violated, it must plead its rules and allege the facts which constitute the defense, and we think this a sound rule of practice. *Sherman v. Hannibal & St. Joe R. R. Co.,* 72 Mo. 62; *Weymouth v. Broadway, etc., R. R. Co.,* 142 N. Y. 681; *Vail v. Broadway, etc., R. R. Co.,* 147 N. Y. 377.

The question as to whether the court rightfully took the case from the jury and decided as a matter of law that the plaintiff was guilty of such contributory negligence as would prevent a recovery is the controlling one in this case It is uncontroverted that the plaintiff was a passenger upon the defendant's train. The train was a mixed train, carrying both freight and passenger cars. The plaintiff went into the baggage compartment of the combination coach, and there took a seat upon a box, and there remained until he was hurt, after which he got onto a flat car and rode. No one in charge of the train either directed him into the baggage car or objected to his occupying the same. There were a number of other passengers occupying the baggage car at the time. It was the custom for passengers to occupy the baggage compartment between the stations of Tecumseh and Shawnee, and the conductor took fare from those in such car and made no objection to them riding there. The plaintiff had a ticket when he went upon the train to take passage to Shawnee, but his ticket was not taken up until after the accident. There was printed upon the door between the passenger and baggage car the words "No admittance." The door was standing open, and, when open, these words were not visible to one in the passenger compartment. The company had printed rules and regulations forbidding em-

ployes to allow passengers to ride in the baggage car. There was no proof of any rules or regulations being posted in the passenger coach or compartments for passengers in the train. It was a controverted question of fact as to the number of passengers on the train. It was a controverted question as to whether there was a passenger coach in the train in addition to the combination car. It was a disputed question as to whether the train was crowded, and whether there were any vacant seats in the passenger compartments at the time of the accident. It was a disputed question as to whether the plaintiff could have found a seat had he gone through the train. The combination car, in which plaintiff rode and was hurt, was the rear car in the train. There was nothing in the position occupied by plaintiff in the baggage car that could in any manner have contributed to his injury, except the fact that he was not sitting in a seat intended for occupancy by passengers. Upon the foregoing state of facts, what was the duty of the court?

Several of our state courts hold to the doctrine that a passenger is entitled to a seat in a passenger coach, and if he fails to occupy such seat, and occupies a place not intended for passengers, he is guilty of negligence *per se*, and is precluded from recovery, if injured while occupying such position; that he may demand a seat, and, if the carrier fails to provide him with one, he may retire from the train and maintain an action against the carrier for damages. This may be the safe and conservative rule, but it is not the practical one. Passengers arrange for their dates of travel, and arrange for their business at their destination. They arrange for train and business connections and have a right to rely upon the business of the carrier, when they purchase a ticket or engage passage, to receive them at the proper time and place, to provide them with necessary and usual accommodations, to transport them upon usual and regular trains, and deliver them at the destination their ticket calls for; and if, upon entering the train as a passenger, they find it overcrowded and no seats un-

occupied, they have the right to seek the next most available place, the one that reasonably offers the place of greatest safety, and with proper caution occupy the same until the carrier shall provide him with better. Our legislature, following the example of some of the older states, recognized this right at an early period of our territorial existence, and enacted statutory provisions which, in a great measure, control the determination of the question before us. These provisions are as follows:

Wilson's Statutes, 1903, sec. 657: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

Section 658: "A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care."

Section 659: "A carrier of persons for reward must not overcrowd or overload his vehicles."

Section 660: "A carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, must treat them with civility, and give them a reasonable degree of attention."

Section 712: "A common carrier of persons must provide a sufficient number of vehicles to accommodate all the passengers who can be reasonably expected to require carriage at any one time."

Section 713: "A common carrier of persons must provide every passenger with a seat. He must not overload his vehicle by receiving and carrying more passengers than its rated capacity allows."

Section 714: "A common carrier of persons may make rules for the conduct of his business, and may require passengers to conform to them, if they are lawful, public, uniform in their application and reasonable."

Section 1050: "In case any passenger on any railroad shall be injured while on the platform of a car while in motion, or in any baggage, wood or freight car, in violation of the printed regulations of the corporation, posted up at the time in a conspicuous place inside of its passenger cars, then in the train, such

corporation shall not be liable for the injury; provided, it had furnished room inside its passenger cars sufficient for the accommodation of its passengers."

Section 1051: "When fare is taken by any railroad corporation for transporting passengers on any mixed train of passenger and freight cars, or on any baggage, wood, gravel or freight car, the same care must be taken and the same resposibility and duties are assumed by the corporation as for passengers on passenger cars."

When the plaintiff purchased his ticket and paid his fare to the station agent at Tecumseh, he was a passenger for reward and entitled to transportation upon the defendant's train from Tecumseh to Shawnee; and it was the duty of the railway company to provide him a suitable vehicle in which to ride, safe and fit for the use, to provide him with such accommodations as were usual and reasonable, to provide him with a seat and give him a reasonable degree of attention, and no degree of care would excuse any default in this respect. The railway company was a carrier of persons for hire or reward, and was operating a mixed train consisting of passenger and freight cars, upon which it received the plaintiff as a passenger. In such case the law required of the carrier the "utmost degree of care and diligence for his safe carriage," and imposed upon it the same responsibility and duty as for carrying passengers upon passenger cars. It is true the carrier is permitted to make rules and regulations for the conduct of its business, and if such rules are lawful, are public, reasonable, and uniform in their application, may require the passengers to obey them. The manner of making such rules public, so as to charge passengers with notice thereof, is prescribed by the statute—they must be "posted up at the time in a conspicuous place inside of its passenger cars then in the train." If such regulations are so posted, and the passenger is injured while violating such reasonable rules, then such passenger cannot recover, provided the carrier had furnished room inside its passenger cars sufficient for the accommodation of its passengers. The statute exempts the carrier from liability for injuries to a passenger when

injured on a platform or in a baggage car, when it has performed two conditions, viz.: Posted up in its passenger cars in a conspicuous place printed regulations forbidding the passenger to occupy such places, and provided him with sufficient accommodations in its passenger coaches. It necessarily follows that if the carrier has failed in either of these requirements. and the passenger is injured by the negligence of the carrier while riding upon the platform or in the baggage car, the carrier is liable for such injuries.

Whether the statute relating to the liability of carriers for injuries to passengers upon platforms or in baggage cars is an adopted one we are not advised, but an examination of the adjudicated cases discloses that the states of New York and Missouri each have statutes identical in language with ours. They have been in force in those states for more than half a century, and have received uniform construction. It is held in both states that it is the duty of the carrier, if it has adopted rules and regulations respecting the carrying of persons upon the platform of cars or upon baggage cars, that in order to charge the passenger with the observance of such rules they must be printed and must be posted up in the passenger cars in such conspicuous place as will be observable to passengers within the cars; that no mere words or warnings will fill the requirements of this statute, but the printed rules or regulations must be actually posted; also, that the carrier must provide the passenger with a seat in its passenger cars, and that if any of the seats are occupied with luggage or one passenger is occupying more than one seat he is not bound to request such obstructions removed, but may seek some other unoccupied place. *Nolan v. Brooklyn, etc., R. R. Co.,* 87 N. Y. 62; *Werle v. Long Island R. R. Co.,* 98 N. Y. 650; *Willis v. Railroad,* 34 N. Y. 670; *Weymouth v. Broadway, etc., Co.,* 22 N. Y. Supp. 1047; *Merwin v. Manhatten Ry. Co.,* 113 N. Y. 659; *Graham v. Manhattan Ry. Co.,* 149 N. Y. 336; *Morrison v. Erie R. R. Co.,* 56 N. Y. 307; *Schaefer v. Union Ry. Co.,* 51 N. Y. Supp. 431; *Wey-*

*mough v. Broadway, etc., Co.,* 142 N. Y. 681; *Vail v. Broadway, etc., Co.,* 147 N. Y. 377; *Sherman v. Hannibal & St. Joe R. R. Co.,* 72 Mo. 62; *Wagoner v. Mo. Pac. Ry. Co.,* 97 Mo. 572; *Berry v. Mo. Pac. Ry. Co.,* 124 Mo. 223; *Gersite v. U. P. Ry. Co.,* 23 Mo. App. 361; *Chaney v. L. & M. Ry. Co.,* 176 Mo. 598; *Higgins v. Han. & St. Joe R. R. Co.,* 36 Mo. 418; *Choate v. Mo. Pac. Ry. Co.,* 67 Mo. App. 105. The rule deduced from these cases, under statutory provisions like ours, is that it is not negligence *per se* for a passenger to ride upon a platform of a moving car or in a compartment not intended for the use of passengers, where the trains are overcrowded, or he cannot without great danger or difficulty find a seat in a passenger coach, even though the carrier has provided coaches for its passengers and has posted notice of its rules and regulations; that in case of injury to a passenger while on a platform or in a baggage car the question of the passenger's negligence in occupying such place is one of fact to be determined by the jury.

But notwithstanding these statutory provisions, which are plain and controlling, we think the great weight of modern and well considered cases support the doctrine that, if the train is crowded, it is not negligence *per se* for the passenger to occupy the platform or baggage car, and the question as to whether he was justified in assuming such risk is one for the jury. It is said in Hutchinson on Carriers sec. 1198 (3rd. Ed.) : "If, however, the railway company has permitted the car to be overcrowded, the passenger will not as a matter of law be chargeable with negligence in riding upon the platform, and the question whether in any particular case he was justified in doing so will ordinarily be one of fact for the jury. But when the car is overcrowded and in consequence the passenger is obliged to ride upon the platform, he must exercise for his safety a degree of care commensurate with the increased danger usually incident to such an exposed place, and if he fails to do so, and injury results, his conduct will preclude him from the right of recovery. While there are cases which hold that the passenger will be justified in riding upon the platform if he is unable to obtain

a seat in the car, the better rule would seem to be that if there is standing room within the car he should stand inside rather than expose himself to peril by riding upon the platform. He is not required, however, to disregard the usual courtesies of life in order to get an advantage over other passengers in securing a place within the car. If, therefore, the car should be so crowded that the passenger, in the exercise of reasonable prudence, would be justified in concluding that he could not get inside without unreasonably pushing or crowding his way, he would be under no duty to attempt to enter, and it would not be negligence for him, under such circumstances, to ride upon the platform." Our statute places the riding upon the platform and in a baggage car under the same rule.

Judge Thompson, in his masterful work on the Law of Negligence (2nd Edition, vol. 3, sec. 2958), says: "Upon the question whether contributory negligence is to be ascribed to a passenger who is hurt while riding in the baggage or express car under such circumstances that he would not have been hurt if he had remained in a passenger car, there is considerable conflict of judicial opinion. It is no doubt a reasonable regulation that passengers shall not ride in the baggage car. The safety of the passengers, the impeded discharge of duty by the company's servants, and the security of the property conveyed therein, are considerations in support of this rule. Moreover all passengers are probably aware that the hazard of travel are increased by riding in this portion of the train. *Prima facie*, therefore, a passenger who, unless excused by special circumstances, elects to ride in the baggage car instead of remaining in one of the passenger coaches—assuming that there is room for him—commits an impropriety of such a character that, in case he is injured while so riding and the circumstances are such that he would not have been injured if he had remained in one of the passenger coaches, he will be precluded from recovering damages from the company, unless it appears that he is riding there by permission of the conductor, for the benefit of the company." It will be observed that Judge Thompson holds that the passenger riding in the

baggage car is guilty of indiscretion, and *prima facie* negligent, when he elects to ride in the baggage car, when there is room for him in the passenger coach, and, unless excused by special circumstances, such as riding there with the permission of the conductor for the benefit of the company, or where the regulations are habitually disregarded, or it is customary to convey and accept fare or tickets from passengers in the baggage car without objection by those having the management of the train. The rule that the passenger will not be guilty of negligence *per se* by riding upon the platform or in the baggage car, when the platform or passenger cars are crowded, or when he is unable to observe any vacant seats, but that the question as to whether he acted under all the circumstances as a reasonably prudent man would have acted, and whether the position he occupied at the time of the accident was one of increased risk or in fact bore any causal relation to the injury, is supported by the following authorities, in addition to those cited *supra: Hardenbergh v. St. P. & M. R. R. Co.,* 39 Minn. 3; *Thorpe v. N. Y. C. & H. R. R. R. Co.,* 76 N. Y. 404; *St. L. & I. M. Ry. v. Leigh,* 45 Ark. 368; *Louisville, N. O. & Tex. Ry. v. Patterson,* 69 Miss. 421; *Jacobus v. St. Paul & C. Ry.,* 28 Minn. 134; *C. & O. Ry. v. Jordan* (Ky.) 76 S. W. 145; *Kentucky Central Ry. v. Thomas,* 79 Ky. 160; *Morgan v. L. S. & M. S. Ry.,* 70 L. R. A., 609; *Lynn v. So. Pac. Ry.* (Cal.) 24 L. R. A. 710; *McGuire v. Middlesex Ry. Co.,* 115 Mass. 239; *L. S. & M. S. Ry. Co. v. Kelsey,* 180 Ill. 530; *Chicago & Western Ind. Ry. v. Newell,* 212 Ill. 332; *Benedict v. Mil. & St. P. Ry.,* 86 Minn. 224; *Lynn v. So. Pac. Ry. Co.,* 103 Cal. 7; *Bonner et al. v. Glenn* (Tex.) 15 S. W. 572; *C. & A. Ry. v. Fisher,* 141 Ill. 614; *C. & O. Ry. v. Long,* 100 Ky. 221; *Graham v. Receiver,* 20 Wash. 466; *Marquette v. C. & N. Ry. Co.,* 33 Iowa 564; *Penn. Ry. Co. v. Paul,* 126 Fed. 157 (C. C. A.); *Dennis v. Pittsburgh, etc., Ry. Co.,* 165 Pa. 624; *G. H. & San A. Ry. Co. v. Morris,* 94 Tex. 505; *Trumbull, Rec., v. Erickson,* 97 Fed. 891 (C. C. A.); *Highland Av. & B. R. R. v. Donovan,* 94 Ala. 299; *Pray v. Omaha St. Ry.,* 44 Neb. 167; *Blake v. Burling-*

*ton, C. R. & N. Ry Co.,* 89 Iowa 8; *B. & O. Ry. v. Slate,* 72 Md. 36; *Cody v. N. Y. & N. E. R. R. Co.,* 151 Mass. 462; *Wagner v. Mo. Pac. Ry. Co.,* 97 Mo. 512; *Berry v. Mo. Pac. Ry. Co.,* 124 Mo. 223; *N. Y. L. E. & W. Ry. Co. v. Ball,* 53 N. J. Law 283; *Washburn v. Nashville, etc., R. R. Co.,* 40 Tenn. 638; *International & G. N. Ry. v. Ormond,* 64 Tex. 485.

We think the court erred in taking this case from the jury. A number of witnesses testified that the train was so crowded when the plaintiff went upon the train, that no seats could be obtained, and some testified that it was even difficult to get to the door of the car. Upon the other side, evidence was submitted to the effect that there were several vacant seats in one of the passenger cars, and that there was no difficulty in getting into the passenger coaches. This was a material question in the case. It was also a material question whether the carrier had posted notice of its rules and regulations relating to passengers occupying the baggage car. We think, in view of the fact that the compartment occupied by the plaintiff was in the rear of the train and he was sitting upon a box in an unexposed part of the car, that there is a debatable question as to whether the position he occupied was any more hazardous than a seat in the passenger coach, if there was such a car in the train. These questions were questions of fact, upon which reasonable minds might fairly come to different conclusions.

The judgment of the district court is reversed, and a new trial ordered, at the costs of the defendant in error.

Burwell, J., who presided in the court below, not sitting; Irwin and Pancoast, JJ., absent; all the other Justices concurring.