## DEPUY v. SELBY.

No. 9121—Opinion Filed July 8, 1919.

Rehearing Denied Nov. 25, 1919.

(Syllabus by the Court.)

**1. Action—Joinder of Causes.**

Rev. Laws 1910, sec. 4738, authorizes the uniting of several causes of action in the same petition whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of the same transaction or transactions connected with the same subject of action.

**2. Reformation of Instruments—Scope of Relief—Damages for Breach.**

As courts of equity have always asserted the right to give complete relief on all matters properly brought before them, the party who seeks in a court of equity relief by reformation of a written instrument or deed may ask and obtain restoration thereof and damages for breach of a general warranty therein contained when reformed.

**3. Limitation of Actions—Estoppel of Grantor to Plead Statute.**

In an action for the reformation of a deed and for damages for a breach of a covenant of warranty therein when reformed, it appeared that some time after the delivery of the deed and the payment of the consideration by the grantee, such grantee was informed that the deed did not contain covenants of warranty as represented to him by the grantor at the time the deed was delivered, and thereafter, within the period of limitation, the grantee made request of the grantor for a return of the money paid, as he, the grantee, was threatened by suit for the land, and the grantor, knowing that such suit was imminent, requested the grantee to remain in possession of the land and to make a deferred payment then due of the purchase price, assuring the grantee that his title was good, and that the grantor was back of the same, and the grantee was thereby induced to remain in possession of the land and make said deferred payment, and thereafter the grantee, on being served with summons in said suit, again requested the grantor to make good the title or return the purchase price, whereupon the grantor again assured the grantee that he had a good title, and that he would back the same, and requested the grantee to further wait and not sue him, and he, also being a party defendant, requested the grantee to await the outcome of the suit, saying he would employ counsel to defend on behalf of both. He did employ counsel, who filed separate demurrers for each, but, on the same being overruled by the court, the grantor, without knowledge or consent, and without informing the grantee, his codefendant, filed a disclaimer in said suit, which was unknown to the grantee until a few weeks before the trial by which the grantee was evicted from the greater portion of the land. Within one year after he was evicted from the land, he brought suit for reformation of the deed, and upon the covenants of warranty in said deed, and the grantor pleaded the statute of limitations. Held, that the grantor is estopped from maintaining such defense

**4. Trial—Direction of Verdict—Failure of Defense.**

Where, under the pleadings, the plaintiff is entitled to recover unless a certain defense pleaded by the defendant is sustained, and where no evidence is produced reasonably tending to support such defense, a verdict should be directed in favor of the plaintiff.

**5. Appeal and Error—Affirmance.**

Record examined, and, it appearing that substantial justice has been done, the judgment of the trial court is affirmed.

Owen, C. J., dissenting.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action by Jesse L. Selby against John M. Depuy. Verdict directed for plaintiff, and defendant brings error. Modified and affirmed.

K. B. Turner, M. E. Turner, W. W. Noffsinger, and Y. B. Broome, for plaintiff in error.

J. B. Lucas and Britton H. Tabor, for defendant in error.

JOHNSON. J. We will refer to the parties as they stood in the trial court, plaintiff in error being defendant below, and defendant in error, plaintiff below.

This action was commenced by the plaintiff on January 28, 1916, by filing his petition, in which he alleged, in substance, that on or about the 15th day of October, 1910, the plaintiff and defendant entered into an oral agreement under and by which defendant agreed to sell plaintiff a tract of land located in McIntosh county. Then follows a description of the land, being 140 acres according to the government survey thereof. Plaintiff alleged that under and by the terms of said oral agreement the defendant agreed to deliver to the plaintiff a general warranty deed, with all the covenants of warranty and a good and sufficient title to the land, free from all incumbrances and claims of any kind or character, and that on the 31st day of October, 1910, the defendant delivered to the plaintiff what purported to be, and what the plaintiff understood to be, a general warranty deed in and to said land, but that instead thereof the defendant delivered what is known as a special warranty deed, conveying only the right, title, and interest of the defendant to said land, a copy of which the plaintiff attached to the petition, marking same "Exhibit A." Plaintiff further alleges that at the time of the execution and delivery of the deed, he was unacquainted with the condition of land titles in Eastern Oklahoma, which fact was well known to the defendant, and that plaintiff knew nothing of the forms of deed sufficiently to convey an absolute fee-simple title; that the defendant, for the purpose of overreaching the plaintiff, falsely represented said deed to be a general warrant deed, and urged plaintiff to accept the same and pay the purchase price of the land, and the plaintiff, relying upon the representations of the defendant, and believing the same to be true, did pay $1,500 of the purchase price at the time of the delivery of the deed, and executed his notes for $1,000, being the balance of the purchase price, and that on the 12th day of September, 1913, Jesse Malvern, the allottee of the said land, instituted a suit in the district court of McIntosh county against plaintiff and the defendant herein and others, for the recovery of the land in controversy herein; that on the 16th day of March, 1915, judgment was rendered therein, divesting the plaintiff and the said defendant herein of all right, title, and interest in and to said land, and vested the title to the same to the said Jesse Malvern, a copy of which judgment and decree is attached to plaintiff's petition, marked "Exhibit C;" that on the institution of said suit the defendant herein agreed to defend said cause and protect the title to said land, and with the seeming intent to protect plaintiff, defendant filed a demurrer in said cause, which was overruled, and that he thereafter, with the intent to escape liability, fraudulently and with the intent to prevent the rendition of any judgment against him, filed a disclaimer and retired from said suit, leaving the plaintiff to stand all the burden to the said litigation, a copy of which disclaimer plaintiff attached to his petition, causing same to be marked "Exhibit D," and the plaintiff was compelled to employ attorneys to represent him in his defense in said suit, and was compelled to pay attorney's fees.

Plaintiff concludes his petition with a prayer for judgment in the sum of $2,500, and legal interest and attorney's fees, for costs and for other general equitable and special relief, to which petition defendant thereafter filed his motion to require the plaintiff to make his petition more definite and certain, and to separately state and number his cause of action, which, being overruled, he filed a general demurrer, which among other things, stated that said petition shows on its face that plaintiff's alleged cause of action was barred by the statute of limitations of this state, which demurrer was overruled by the court, and the defendant thereafter filed an answer consisting of a general denial, and thereafter, by leave of the court, filed, an amended answer, consisting of a general denial, and further alleged that the alleged cause of action in plaintiff's petition was barred by the statute of limitations of two years, to which amended petition the plaintiff filed a reply, charging the defendant with falsely and fraudulently representing to the plaintiff, before and after the institution of the suit mentioned and during the pendency thereof, that he would hold the plaintiff harmless and defend said suit, and save the plaintiff from any loss on account of same, and agreed to make the title to the land good in any event, and the plaintiff alleged that he relied upon said statements, believing them to be true, and that the defendant would fulfill his promises so made, and that the plaintiff believed at the time of the rendition of the judgment against him in said suit that defendant would make good his title to said land and hold plaintiff harmless, and therefore plaintiff alleges that on account of said conduct the defendant is estopped from pleading the statute of limitations herein.

Upon the issues thus joined, thereafter, on December 13, 1916, the cause proceeded to trial to a jury.

The plaintiff testified that he went into possession of the land immediately after receiving the deed therefor, and remained in possession until the judgment of the court was rendered against him in 1915; that during the pendency of the suit, defendant, at different times, promised to hold him harmless, and that he would make his title good; that after the judgment was rendered against him he asked his attorney what he thought about getting anything out of defendant; that he would leave it up to him; and that thereafter this suit was filed.

The record discloses that the land in controversy consisted of 140 and a fraction acres; that the plaintiff was evicted in the suit above referred to from 117 acres only, and at the time of the trial the plaintiff still had 23 acres, which he testified was the poor part of the land, and that he had paid all the agreed consideration for the land except $250. The plaintiff gave much other testimony both on direct and cross-examination along the same line as that referred to above, but we do not think the same materially adds to or detracts from the testimony hereinbefore referred to.

At the conclusion of his testimony the plaintiff called as a witness in his behalf one W. M. Duffey, but this witness gave no testimony material to the issues involved, at the conclusion of which the plaintiff rested, and the defendant demurred to the plaintiff's testimony for the reasons:

"(1) Because it fails to sustain a cause of action for fraud and deceit; (2) that it fails to sustain any cause of action upon a breach of warranty"

—which was by the court overruled and exception saved by defendant. Thereupon the defendant moved for an instructed verdict in his behalf, which was also overruled by the court, and exception saved by defendant, whereupon the defendant announced, "We stand on the evidence." Thereafter the plaintiff moved the court to instruct the jury to return a verdict in favor of the plaintiff for the sum of $1,870.32, and interest thereon at 6 per cent. per annum from October 21, 1910, and the sum of $25 expended for attorney's fees, which motion of the plaintiff for instructed verdict was sustained by the court, to which the defendant excepted.

Thereafter the defendant filed a timely motion for new trial, which was overruled by the court and exception saved by defendant, and in due time the defendant lodged his appeal in this court and makes assignments of error: That the court erred in overruling motion for new trial and in overruling his motion to make the petition of defendant in error more definite and certain,

and in overruling the demurrer of the plaintiff in error to petition of defendant in error, and in overruling objection to the introduction of evidence, and in overruling motion to strike out paragraph 2 of reply of plaintiff to the amended answer of the defendant, and in assessing the amount of recovery, and in overruling the demurrer to the evidence and refusing request for instructed verdict, and in instructing the jury to return a verdict for plaintiff because the verdict and judgment were not sustained by the evidence and were contrary thereto, and that the verdict and judgment are contrary to law.

The plaintiff in error, in his brief, discusses his numerous assignments of error herein under three propositions, which are as follows:

(1) The court erred in overruling the demurrer of defendant to the petition of plaintiff.

(2) The verdict and judgment are excessive.

(3) The verdict and judgment are not sustained by the evidence.

Under proposition No. 1, supra, the defendant argues that: "plaintiff's action is evidently one for relief on the grounds of fraud, although the petition contains several allegations charging a breach of warranty." and then makes the following contention:

"It is evident that the action is based upon the alleged fraud of defendant in representing that a deed of special warranty was one of general warranty. These representations were made, it is alleged in the petition, when the deed was delivered on October 21, 1910, The present action was brought by plaintiff in January, 1916, and there are no allegations in his petition that he did not discover the alleged fraud until within two years from the filing of this suit."

To this petition, defendant filed a demurrer, raising all the statutory grounds. This demurrer was overruled, and exceptions saved.

At the opening of the trial defendant objected to the introduction of any evidence under the petition, which objection was overruled, and exceptions saved.

At the conclusion of the plaintiff's evidence the defendant demurred thereto, which was overruled and we think properly so, as under the rule frequently announced by this court:

"A demurrer to the evidence admits as true all of the evidence of the plaintiff which in the least degree tends to support the allegations of his petition and the theory of his case, together with all inferences and deduc-

tions opposed to those interposing the demurrer which may be reasonably drawn from the evidence, and that in passing upon the demurrer the court must ignore all conflicts and contradictions, and must treat as not considering any evidence favorable to the party demurring, and after giving all of the evidence such consideration, together with the reasonable inferences and deductions which may be drawn therefrom, and after having treated and considered all evidence favorable to the party demurring as withdrawn from the case, if there is any evidence in the slightest degree which tends to support the plaintiff's case, however unreasonable and contradictory it may appear to the court to be, to sustain the demurrer would be error." Scully v. Williamson, 26 Okla. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265; St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Cameron v. Henderson, 40 Okla. 648, 140 Pac. 404; Midland Valley R. Co. v. Larson, 41 Okla. 361, 138 Pac. 173.

The plaintiff in error, in seeking to reverse this case, seems to rely principally upon the proposition that the plaintiff's cause of action was purely one for fraud and deceit, and that such cause of action, if any existed, was barred by the statute of limitations, as contained in subdivision 3 of section 4657, Rev. Laws 1910, which reads:

"Within two years; * * * An action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud "

—and insists that the fraud complained of by the plaintiff, if any there be, was committed when the deed was delivered on October 21, 1910, and that the present action was brought by the plaintiff in January, 1916, and there were no allegations in his petition that he had not discovered the alleged fraud until within two years from the filing of this suit.

This contention is not supported by the record. The plaintiff testified that at the time the deed and abstract were delivered to him by the defendant he placed the abstract in the bank and mailed the deed to the recorder to be recorded, and that when the same was delivered to him by the recorder he placed it in the bank with the abstract, and that both remained there until some time after October 31, 1911, when he undertook to negotiate a loan upon the land. At the request of the loan agent, he delivered the abstract and deed to said agent, who thereafter informed the plaintiff he had a special warranty deed, instead of a general warranty deed; that he immediately called upon the defendant to inform him of the information he had obtained, and that the defendant assured him that his title was all

right, and that he would stand back of the same and protect him; and that he relied upon such representations of the defendant so made. On September 12, 1913, the case in ejectment was filed; that he immediately thereafter saw the defendant, and informed him that he was sued for the land, and the defendant again assured him that he would still stand back of him, and they went together to see the plaintiff in the Malvern suit, and the defendant importuned such plaintiff to discontinue his suit and give him another deed to the land, and upon his refusal so to do the defendant employed counsel to represent them in the defense of said suit; and that the plaintiff still relied upon the defendant to hold him harmless, and never suspected that he was not doing so until after the plaintiff learned that the defendant had filed a disclaimer, which was only a few weeks before the trial, and that judgment evicting the plaintiff from the 117 and fraction acres of the land described in said deed was entered in said case on the 16th day of March, 1915, and that after learning of the filing of such disclaimer, and after the judgment was rendered against him, the plaintiff consulted his lawyer, and requested him to take such action against the defendant as he saw proper to protect plaintiff, and that thereafter this suit was filed against the defendant on January 28, 1916.

The plaintiff in error, under the assignments of error that the verdict and judgment are excessive, and are not sustained by the evidence, contends that, under the rule laid down by sections 1167 and 2856, Rev. Laws 1910, for the computation of the damages for a breach of warranty, where the breach is partial only, there is an entire lack of competent evidence to show the value of the land lost at the time of the purchase, or the value of the whole tract.

Under this section of our statute the measure of damages for a partial breach is such portion of the purchase price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property, with interest thereon for the time during which the grantee derived no benefit from the property, not exceeding six years, and any expenses incurred by the grantee in defending his possession. While it is true there is no direct evidence as to the value of the land lost or the value of the whole tract at the time of the sale, however, it was proved by the plaintiff without objection from the defendant that the land lost was of more value per acre, or better land than that retained, and the land retained was rougher and poorer than the 117 acres which was lost.

The proof showed that plaintiff agreed to give $2,500 for the 140 acres, but had in fact only paid $2,250, and had incurred $25 expense in defending the suit by which he was evicted. After plaintiff had closed his case, the defendant refused to introduce any evidence at all, electing to stand on the evidence of the plaintiff. While it is true that the burden of proof was on the plaintiff to establish the damage which he suffered, yet under the proof we cannot say that plaintiff has not offered sufficient evidence to entitle him to recover the amount the court directed the jury to find, with the exception of the interest thereon from October 21, 1910.

The amount of recovery in such cases being that portion of the purchase price which the value of the lost land bears to the value of the entire tract, and the plaintiff proving that the land retained was of lesser value, certainly it could not prejudice the defendant, where a computation of the amount allowed shows that the plaintiff, in asking for a directed verdict, estimated the value per acre of the land retained as equal to that lost. This evidence, while not altogether satisfactory, certainly put the burden on the plaintiff, and the defendant cannot be heard to complain, since under this evidence he has not been injured.

We are of the opinion, however, that under the sections referred to above the court was in error in allowing interest on the amount of $1,870.32 from October 21, 1910, it being shown by the evidence that the plaintiff was in possession of the land until March 16, 1915. Counsel for defendant in error, the plaintiff, admit that this was error, and offer to remit the interest from October 21, 1910, to March 16, 1915. The judgment of the trial court may be modified, in that interest on the sum of $1,870.32 shall only be allowed from March 16, 1915.

Under the amended pleadings and the evidence of the plaintiff, the trial court held, and we think properly so, that the plaintiff's suit was: (1) One for reformation of the deed so as to make the same a general warranty deed; (2) for a breach of warranty when so amended, and to recover back the amount of the purchase price paid with legal interest, and attorney's fees paid in the suit against the plaintiff in which he was evicted from the land. We find that such procedure is amply sustained by the authorities.

In 23 R. C. L. 357, it is said:

"As courts of equity have always asserted the right to give complete relief on all matters properly brought before them, the party who seeks in a court of equity relief by reformation of a written instrument may ask and obtain an enforcement of the instrument as reformed, even though in so doing the court is asked to administer relief which pertains to courts at common law. He may ask for reformation of an instrument and have money damages under it as reformed. For instance, he may ask * * * that a deed be reformed, and that he may be awarded damages for the breach of a general warranty therein contained when reformed." Stewart's Estate v. Faulkenberg, 82 Kan. 576, 109 Pac. 170; Vermont Loan & Trust Co. v. McGregor, 5 Idaho, 320, 51 Pac. 102; Hutchinson v. Ainsworth, 73 Cal. 452, 15 Pac. 82, 2 Am. St. Rep. 823; Cammeron v. White, 74 Wis. 425, 43 N. W. 155, 5 L. R. A. 493; Butler v. Barnes, 60 Conn. 170, 12 Atl. 419, 12 L. R. A. 273.

It is also well recognized that, where a petition states grounds justifying a reformation along with an action asking either equitable or legal relief, reformation may be granted under a prayer for general relief. Webster v. Harris, 16 Ohio, 490; Herring v. Neely, 43 Iowa, 157; Haslett v. Stephany, 55 N. J. Eq. 68, 36 Atl. 498; Moore v. Crump, 84 Miss. 612, 37 South. 109; Pomeroy, Eq. Jurisprudence, vol. 5, p. 4.

We now come to the question of whether or not the plaintiff's first cause of action—that is, for reformation of the deed on account of fraud and mistake—was barred by the statute of limitation. Rev. Laws 1910, sec. 4657, provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued and not afterwards: * * * Third. Within two years * * * An action for relief on the ground of fraud —the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Under the provisions of the statute, supra, the limitation provided therein starts to run, not necessarily from the date of the commission of the fraud, but from the discovery thereof, which makes an exception to the rule at common law. In any case where an action is based upon fraud, and as a defense thereto the statute of limitation is urged, it then becomes a question of fact to be determined when the fraud relied upon was discovered.

The plaintiff in error relies, for a reversal of this case, principally upon the statute of limitations, under propositions 1 and 3 of his assignments of error; that is, the court erred in overruling the demurrer of the defendant to the petition of plaintiff, and the verdict and judgment were not sustained by the evidence.

At the conclusion of the plaintiff's testimony given at the trial the defendant inter-

posed a demurrer thereto, and moved for an instructed verdict, both of which being overruled by the court and exception saved' by defendant, who stood upon his demurrer and declined to offer any testimony, thereupon, on motion of the plaintiff, the court instructed the jury to return a verdict in favor of the plaintiff, and upon the return of the verdict of the jury the court accordingly rendered judgment in favor of the plaintiff, and in so doing necessarily made general findings of fact and conclusions of law in favor of the plaintiff.

The next question presented is: Does the evidence tend reasonably to sustain the findings of fact of the court? It is clear from the testimony of the plaintiff that he was induced by the fraud and deceit of the defendant to accept a special warranty deed to the land, believing the same to be a general warranty deed, and to pay the cash consideration of $1,500, and to execute his notes for the deferred payments, and that about one year thereafter, when he was told by Mr. Plumley, a real estate man in Checotah, that he didn't have a general warranty deed, that he had a special warranty deed, was the first time he ever knew there was such a thing as a special warranty deed.

It is clear from the testimony of the plaintiff that, after he first learned of the defect in his deed, he went to the defendant with the matter, and that the defendant again assured him that his title was all right, and requested him not to worry; said he would stand between him and all danger; requested him to go ahead and pay his notes; said he would stand between plaintiff and the nigger; said the title would be good through him; that he had plenty of property, the defendant saying "that he had always said that he would stand behind him and he still said so;" and that, relying upon his promises that he would make the deed good, he paid him all the purchase price of the land except $250; that when he was sued for the land, he went to the defendant and told him that he had had summons served on him, and was sued for the land.

The plaintiff testified that he talked the matter over with the defendant, and that the defendant proposed to go with the plaintiff and see the party who brought the suit for the land, and that they did so, and on the party's refusal to withdraw his suit the plaintiff informed the defendant that he would look to him to make good the title, whereupon the defendant informed the plaintiff that it would be no use to commence on him with the law until the nigger took the land away from the plaintiff; that he again promised the plaintiff to make his title good.

It is clear from the testimony of the plaintiff that the plaintiff relied implicitly upon the representations of the defendant that he, the defendant, would defend the title to the land and hold plaintiff harmless. It is evident from the testimony of the plaintiff that the defendant never intended to protect the plaintiff in his title, and that his promises to do so were made for the purpose of deceiving the plaintiff into paying the full purchase price of the land.

The testimony of the plaintiff discloses that after judgment of eviction had been rendered against the plaintiff, the defendant failed and refused to reimburse the plaintiff for the amount paid out by the plaintiff for the land, or attorney's fees, and costs incurred in defending the suit brought against him for the land.

The judgment evicting the plaintiff was rendered on the 16th day of March, 1915, and within one year from the rendition thereof, to wit, on January 28, 1916, the plaintiff filed this action in the court below, which was, as we have heretofore seen, for the reformation of a deed and for the recovery of the breach of warranty of the same when reformed, and his damages on the account of such breach of warranty, the same being the amount paid upon the purchase price of the land, with legal interest thereon and $25 attorney's fees, paid out and expended in the ejectment suit, wherein the plaintiff was evicted from the land.

In Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 Pac. 174, L. R. A. 1917B, 1253, it is said:

"Fraudulent concealment constitutes an implied exception to the statute of limitations, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud."

In the above case, Sharp, C., after reviewing cases from almost every state in the Union, as well as English cases, and decisions of the Supreme Court of the United States, in concluding the opinion, said:

"Following what we believe to be the great weight of authority, and keeping in mind that the very purpose of the statute of limitations was to prevent fraud and not to make it secure and successful, we conclude that the petition stated a good cause of action, and that the trial court erred in sustaining the demurrer."

The Supreme Court of Kansas, in the case of Missouri, K. & T. R. Co. v. Pratt, 73 Kan. 210, 85 Pac. 141, 9 Ann. Cas. 751, in a case very similar to the instant case, said:

"In an action for damages for the breach of a covenant of warranty in a conveyance of real estate, it appeared that at the time of the delivery of the deed, and the payment of the consideration by the grantee, a third person was in actual possession of the real estate, claiming to hold under a title paramount to that of the grantor in such deed. Such occupancy and claim was well known to the parties to such conveyance, and they knew that the occupant intended to hold possession until ousted by judicial process.

"Litigation was then pending, and suits were contemplated by the grantor which would finally determine the ownership of such real estate. In the litigation which ensued the occupant was successful in the lower courts, but the grantor carried the cause to the Supreme and federal courts.

"The grantee, concluding that the grantor would eventually lose, insisted upon the repayment of his money. The grantor, however, by assurance that his title would ultimately be established, and, if not, that the money would be refunded, requested and induced the grantee to wait until the end of the litigation, which he did, relying upon such representations of the grantor. The matter was not fully ended until long after the statute of limitations had expired, within which a suit upon the covenant of warranty might have been brought. The grantee, soon after the final determination of the litigation, which was adverse to the grantor, brought suit upon the covenant of warranty in said conveyance. The grantor pleaded the statute of limitations. Held, that the grantor is estopped from maintaining such defense."

In the above case, Graves, J., in the body of the opinion used the following language:

"After Pratt has so waited and the company after full opportunity to test its claim has failed, it would be unconscionable for it to assert the very delay, which it requested for the purpose of avoiding payment to Pratt, of the money paid by him for which he had received nothing. The ordinary rules of justice and fair dealing rebel at the suggestion. The facts furnish abundant reason for the application of the rule of estoppel to such conduct. We think this is a case where this rule should be applied. Cases may be found which are apparently opposed to this view; in fact, considerable conflict exists among the decisions concerning the general subject of changing the statute of limitations by agreement, waiver, and estoppel. Much of this confusion arises from the difference in statutes, and in the application thereof to particular cases. Very few can be found which, when closely examined, will be found to differ materially, in principle, from the view we have taken; it would be useless, therefore, to attempt a review thereof."

From an examination of the entire record we are convinced that no reversible error was committed by the trial court, that the evidence of the plaintiff tended reasonably to support the judgment rendered in his behalf, and that the defendant was not otherwise deprived of any constitutional or statutory right.

Judgment was so modified as to allow interest on $1,870.32 from March 16, 1915, instead of from October 21, 1910, as specified in the judgment of the trial court, and with such modification the judgment of the trial court is affirmed.

KANE, RAINEY, HARRISON, and McNEILL, JJ. concur.

OWEN, C. J., dissents.

SHARP, PITCHFORD, and HIGGINS, JJ., not participating.