## VILLINES et ux. v. CONATSER.

No. 19747. Opinion Filed Sept. 15, 1931.

W. H. Brown, G. A. Holley, and E. D. Holley, for plaintiffs in error.

Park Wyatt and Hayes, Richardson, Shartel, Gilliland & Jordan, for defendant in error.

McNEILL, J. This is an appeal from the judgment of the district court of Pottawatomie county rendered on the 9th day of March, 1928. The parties will be referred to as they appeared in the trial court, John A. Villines and Minnie C. Villines, his wife, plaintiffs in error, as plaintiffs, and John A. Conatser, defendant in error, as defendant. Plaintiffs were the owners of and resided on a tract of land, comprising 193 acres, and had executed two mortgages on same in favor of the Oklahoma Farm Mortgage Company, the first mortgage being to secure plaintiffs' coupon notes to that company for $7,000, bearing interest at the rate of 7 per cent. per annum, and the second mortgage to secure a note in the sum of $1,400.

Plaintiffs having failed to pay the taxes on the premises in question for a number of years, and being in default of payment of interest on said notes, the Oklahoma Farm Mortgage Company instituted foreclosure proceedings against plaintiffs in the district court of Pottawatomie county on the second note and mortgage, and obtained a judgment against said plaintiffs for the amount due on said note and decreeing foreclosure of the premises in question. The lands were thereafter advertised to be sold at public auction at 2 p. m. on August 24, 1925. On this day the plaintiff, John A. Villines, stopped at Romulus, Okla., on his way to Tecumseh, and took the matter up with defendant in reference to stopping the sale, if possible. At that time, defendant agreed to pay off the judgment against the land, court costs, taxes, abstract fees, etc., to the amount of $2,750, in consideration of which plaintiff agreed to convey to defendant an undivided one-eighth interest in and to the oil and gas royalty in the land. Plaintiffs gave defendant their note for $2,750 due on December 1, 1925, and a second mortgage on the land to secure the same. Later, another interest coupon on the $7,000 first mortgage to the Oklahoma Farm Mortgage Company became due and payment of same was demanded of plaintiffs, and foreclosure proceedings threatened in the event of nonpayment. Plaintiffs were at the time unable to pay the same and after a discussion of the demands of the Oklahoma Farm Mortgage Company for the payment of the interest coupon due, said plaintiffs and said defendant entered into a further agreement designated as an agency or optional contract dated October 30, 1925, by the terms of which said defendant was appointed as agent to sell the premises in question, and was given an option on same expiring on June 1. 1926. Defendant also agreed to pay the additional $710 interest due to the Oklahoma Farm Mortgage Company, and extended the due date on the plaintiffs' note of $2,750, to which had been added said additional interest from December 1, 1925, to June 1, 1926. Both parties had the right to sell the premises in question for $12.500. A certain 80 acres of land in question was to sell for not less than $6,000, being approximately $75 an acre, another 80 acres of said premises for not less than $4,000, or not less than $50 an acre, and the remaining at not less than $2,-

500, or approximately $62.50 an acre. Either party had the right to sell one-half of the royalty for not less than $17.50 per acre and to apply the proceeds on the payment of the indebtedness to the Oklahoma Farm Mortgage Company and to defendant. At the same time the plaintiffs executed to defendant a warranty deed to said premises subject to the Oklahoma Farm Mortgage Company note of $7,000, which deed was placed in escrow in the Tecumseh National Bank at Tecumseh, Okla., with instructions to the bank that, in the event of inability of the plaintiffs or defendant to sell the land in question on or before June 1, 1926, and to pay the amount due, the Tecumseh National Bank was authorized and directed to deliver said deed out of escrow to defendant, and that plaintiffs' indebtedness to the defendant should thereupon become and be canceled. Plaintiffs had the contract examined by their attorneys before the same was signed.

Pursuant to said agreement, defendant paid the $710 due on said interest coupon and also an additional tax certificate, increasing plaintiffs' indebtedness to the defendant in the sum of $3,550.

On an adjoining tract of land, about one-half mile south of the main body of plaintiffs' land, a well for oil known as the Pearson well, had been commenced for sometime and was being drilled. This well was in the course of drilling for three or four years, and plaintiffs apparently relied on paying their indebtedness on the strength of this well being brought in as a producer, and relying on this hope the time of payment of plaintiffs' indebtedness to defendant had been extended from December 1, 1925, to June 1, 1926. Even though said time was extended for the payment of said indebtedness of plaintiffs to defendant, neither plaintiffs nor defendant had succeeded in making disposition of the premises or the royalty prior to the completion of the well.

Plaintiffs were unable to pay their indebtedness to defendant, or any part thereof, or anything upon the mortgage owing to the Oklahoma Farm Mortgage Company, and being unable to find a purchaser for the land or royalty, no oil having been produced from said drilling well, and some question having arisen as to whether the same was considered as a failure or not, the Tecumseh National Bank, on June 2, 1926, in accordance with the terms of the agency contract, delivered aforesaid warranty deed to the defendant, and the same was by the defendant placed of record, and the plaintiffs were so advised. Up to this time, there is little dispute as to the facts in the case. Sometime thereafter, plaintiffs were requested to execute to defendant a quitclaim deed to the premises in question. It is this deed around which the center of controversy turns. Plaintiffs contend that the quitclaim deed was executed with the understanding that the same should not operate as a quitclaim deed, but as a mortgage. The quitclaim deed was dated September 17, 1926, and was executed and acknowledged and delivered to the defendant on the 5th day of October, 1926, which was about a month previous to the time that the Pearson well came in as a small producer. Defendant had paid off and discharged the $7,000 to the Oklahoma Farm Mortgage Company, and executed and filed a release of the mortgage made by plaintiffs to the defendant, and all of plaintiffs' indebtedness both to the defendant and the Oklahoma Farm Mortgage Company, which plaintiffs' attorneys stipulated amounted on the date of the execution of the quitclaim deed to $12,133.87, was canceled and discharged. After execution of the quitclaim deed, plaintiffs continued to stay on the premises, and there is testimony to the effect, offered on behalf of the defendant, that plaintiffs recognized the defendant's right to the premises and paid him rent thereon, and plaintiff John W. Villines stated to different persons that he had sold the property to defendant.

On the 9th day of March, 1928, the court made and filed findings of fact and conclusions of law in the case as follows:

"Findings of Fact.

"The court finds that, on August 24, 1925, and for many years prior thereto, the plaintiff was the owner of the land involved in this controversy and resided on and occupied the same as their homestead, and that at said time said property was incumbered by mortgages in the principal sum of about $9,000 accrued interest, attorney's fees and costs, one of said mortgages having gone to judgment, and the property standing for sale; that on the aforesaid date the plaintiffs executed and delivered to the defendant a second mortgage for $2,750, due December 1, 1925, and also delivered a mineral deed conveying a one-eighth interest in the oil, gas, and other minerals.

"That thereafter, and on October 30, 1925, the plaintiff executed to John Conatser a warranty deed and accompanied its execution by an agency contract, which is pleaded and admitted, and the court finds as a matter of law that the said deed and agency contract were executed as security for the indebtedness evidenced by the mortgage of August 24, 1925, and for other advances in the way of interest, costs and taxes, advanced by the defendants for the benefit of the plaintiffs.

"The court further finds that the indebt-

146

edness evidenced by the mortgage and warranty deed on the 5th day of October, 1926, amounted to approximately $12,250, and that on said date the land involved had an agricultural value of about $40 to $45 per acre, and that the land at said time had an oil value of approximately $25 to $35 per acre, and that on said date the plaintiffs executed to the defendants a quitclaim deed.

"Conclusions of Law.

"The court finds, as a matter of law, that the said quitclaim deed conveyed all of the right, title, and interest, of the plaintiffs in and to said lands and the defendant's title thereto should be quieted."

Plaintiffs attack the findings of fact and conclusions of law made by the court as not being substantially in form and substance as requested by plaintiffs in error, and urge that the purported quitclaim deed should have been held by the court as a mortgage. Plaintiffs allege that the defendant was guilty of fraud and counsel argue in their brief that defendant betrayed the trust and confidence imposed by plaintiffs in defendant, but, suffice it to say, an examination of this record does not show a confidential relationship as contended, nor fraud practiced upon plaintiffs. The real question for determination is the status of the quitclaim deed, as to whether it should be construed as a quitclaim deed or as a mortgage. The burden of proof was on the plaintiffs to prove that the deed was intended to operate and establish its character as a mortgage by clear, cogent, unequivocal, satisfactory, and convincing evidence. Kline v. Kollman, 100 Okla. 160, 228 P. 768; Renas v. Green, 88 Okla. 169, 212 P. 755.

The plaintiffs offered evidence to the effect that the quitclaim deed in this connection was only intended as security. In corroboration of this testimony, two sons-in-law and a daughter of plaintiffs testified. The president of the Tecumseh National Bank testified that plaintiff and his wife signed the quitclaim deed and he took the acknowledgment to the same; that he read the same to Mrs. Villines, the wife of plaintiff, and after the same had been signed. he asked the customary question in reference to the signing and acknowledgment.

It was contended by Mrs. Villines that Walter Conatser, a brother of defendant, stated at the time to her that he was going to see that she was going to get one-half of her land back, but he was not going to let John (her husband) have anything back, because he would run through with it, all of which Walter Conatser and Mr. Rosebush, the president of the Tecumseh National Bank, who took the acknowledgment, denied.

The trial court found that the warranty deed which had been executed by plaintiff was given as security for the indebtedness of plaintiffs as evidenced by the mortgage of August 24, 1925, and for other money advanced by defendant for the plaintiffs in the way of interest and taxes. The court found in reference to the ownership of the land, the indebtedness of plaintiffs, the advancement of money made to plaintiffs by defendant, the execution of the first mortgage by plaintiffs to defendant, the subsequent execution of the agency contract: That the warranty deed executed was intended as a mortgage; that the indebtedness against the land was about $12,250; that the value of the property was about the same as the indebtedness; that, on October 5, 1926, plaintiffs conveyed the property to defendant absolutely by quitclaim deed. In other words, the trial court found that the quitclaim deed was not intended to be a mortgage or security, but was intended as, and was, in fact, an absolute conveyance.

Walter Conatser testified, in part, as follows:

"Sometime along in September, Mr. Villines came to our store in Romulus, said he had been over to the Darby well and struck one of Mr. T. B. Slick's men who wanted some property or royalty in that neighborhood, and asked us what kind of a proposition we could offer him, and we made him this proposition, that if he would find that man who would liquidate, take up this indebtedness, and pay our money back and give us the one-eighth royalty, we would deed it to him and give him one week's time to do it." ·

He also testified concerning a conversation he had with Mr. Robbins, in the presence of the plaintiff John Villines, prior to the execution of the quitclaim deed in question, as follows:

"If you will step into our shoes and pay off this indebtedness, I will deed you, or John (John Conatser) will deed you this property."

The evidence indicates that the defendant was not attempting to take advantage of plaintiffs. However, it does show that defendant was willing at all times prior to the execution of the quitclaim deed to give to plaintiffs full opportunity to redeem the premises upon liquidation of the indebtedness which plaintiffs owed to defendant.

Considering all the facts which had been introduced in evidence and the circumstances surrounding the same, we are of the opinion that the evidence is ample and sufficient to sustain the findings of the trial court.

The evidence on the execution of this quit-

claim deed was conflicting, and there is substantial evidence supporting the finding made on this question by the trial court. This court has often announced the rule set forth in the frequently cited case of Wagg v. Herbert, 19 Okla. 525, 92 P. 250, wherein this court said:

"It is a settled rule of this court, and one which we have reiterated and reiterated time and again, that where the evidence reasonably sustains the finding and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court."

Also:

"Where a case is tried to the court and there is a conflict in the evidence on the issues joined, determination of the questions of fact therein is for the trial court, and Supreme Court, on appeal, will not weigh the evidence or determine as to the credibility of the witnesses, that question being one for the trial court." Adams v. Hansford, 130 Okla. 155, 265 P. 762.

This court in the case of Thomas v. Halsell, 63 Okla. 203, 164 P. 458, states:

"In a suit in equity, the Supreme Court on appeal is not at liberty to set aside the findings of fact of the trial court, unless, after a consideration of the entire record, it appears that such findings are clearly against the weight of the evidence."

Finding no reversible error, the judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. RILEY, J., absent.

Note.— See under (1), (2) annotation in L. R. A. 1916B, 569; 2 R. C. L. 211; R. C. L. Perm. Supp. p. 383; R. C. L. Pocket Part, ti le "Appeal," § 175.