## BUSSE v. BUSSE.

No. 22642. Opinion Filed Dec. 13, 1932.

Rehearing Denied Jan. 3, 1933.

P. K. Morrill, for plaintiff in error.

Moss & Powell, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Oklahoma county in favor of the defendant in error, the plaintiff in the trial court, against the plaintiff in error, the defendant in the trial court. The parties hereinafter will be referred to as they appeared in the trial court.

The issues were made by the filing of a second amended petition by the plaintiff and an amendment to the answer by the defendant. In his second amended petition the plaintiff alleged that he was the father of the defendant and the owner of the land in controversy herein; that prior to July 6, 1908, he became a surety on a certain builder's bond; that at that time the defendant was 26 years of age and resided with him on the land; that when he told the defendant of his having executed the bond, the defendant—

"* * * became violently angry and enraged toward the plaintiff and cursed and directed toward him the wickedest and most profane language; and this defendant continuously kept up such conduct toward the plaintiff until the 6th day of July, 1908. That during such intervening time between the execution of said bond and the signing of same, as surety, by this plaintiff, and the 6th day of July, 1908, there was not a time when this plaintiff returned to his home on the lands above described and at night after having completed his day's work as a bricklayer, that this defendant did not curse and swear at him and threaten to leave the home of this plaintiff and refuse to work on the said farm, attend to the crops or cattle thereon, and further threatened to do physical violence to this plaintiff by reason of his becoming surety on the said bond; that finally just a few days before the 6th day of July, 1908, the said defendant, still cursing and abusing this plaintiff with the vilest and most profane language, commanded this plaintiff to convey to him, the defendant, by warranty deed, the above-described property, else he, the defendant, would forever abandon the home of this plaintiff and never again cross the threshold of this plaintiff. That at all times during such enraged conduct toward plaintiff, the defendant was declaring to plaintiff that his becoming surety on such bond meant the loss of all the property of the plaintiff, but that he endeavored to pacify and persuade the defendant that he was in error and that there was no occasion of alarm by reason of his becoming said surety, but this did not assuage the wrath of the said defendant, and during such few

days just immediately prior to the 6th day of July, 1908, as above set forth, this defendant was continuously commanding plaintiff to convey to him by warranty deed the said property and telling him that even though there might be no danger arising from his being surety on the bond, that he, the plaintiff, had to convey the property to the defendant; and that in the event no harm came to plaintiff by reason of his being surety on such bonds, this defendant would, upon request by plaintiff, reconvey such property to this plaintiff; that plaintiff endeavored to assure defendant that no harm would come to him by reason of his being such surety on such bond, but that defendant was in such a rage and in such wrathful condition at all times, as above expressed, he would not listen to any counsel or reason from this plaintiff, but demanded with threats of violence and threats of departure from the home of this plaintiff as above expressed if he would not execute to him the said warranty deed; that the plaintiff did execute such warranty deed, not by reason of any fear that he would become liable to respond in damages as surety on such bond, but solely by reason of the said threats made and directed to and against him by the said defendant, as aforesaid, and by reason of the defendant promising to reconvey to him when so requested by the plaintiff.

"This plaintiff says further that there were no differences of any consequence that arose between the said builders or contractors and said owner, John Eberle, and never, at any time, was there any expressed danger that the bondsmen would be compelled to respond in damages by reason of any breach of conditions touching the erection of such building, and that this plaintiff constantly impressed that fact by repeated assurances by word of mouth to the said defendant, but to all of such assurances, this defendant turned a deaf ear, but demanded the conveyance of the above-described property to him, as above expressed, and this plaintiff says further that he at no time was influenced to make such conveyance through any anticipation or fear that he would be compelled to make any response by reason of having been surety on such bond, but that he did make such conveyance as demanded of him by the defendant solely by reason of the conduct of the defendant as above set forth, and the assurances on the part of the said defendant that he would reconvey such property to him when so requested; that the defendant knew that such representations were false when made and knew that he was not going to make such reconveyance, that he knew that the plaintiff did not know that such representations were false; that this plaintiff did not know that such representations were false when made, and that he acted upon such representations as being true in making and executing the said warranty deed, as above set forth. Plaintiff says further

that by reason of the confidential and fiduciary relations existing between the defendant and this plaintiff at the time such representations were made, he never conceived that such representations were poisoned with the iniquity of fraud and deceit; that although the said defendant made such representations with the sole purpose of cheating and defrauding this plaintiff of his right, title and interest in and to the said property, that fact did not become fully known to this plaintiff until on or about the 31st day of December, 1929; and that he did not discover the said fraud and have the same fully made known to him until on or about the 31st day of December, 1929, although he had begun to suspect and suspicion the good faith of this defendant on or about the 15th day of March, 1929, but, owing to the fiduciary and confidential relations existing between these parties, he was not convinced of such fraud until on or about the 31st day of December, 1929"

—that "upon such representation on the part of the defendant with respect to the conveyance of such property to him by this plaintiff, that on the 6th day of July, 1908, this plaintiff and his wife, Wilhelmine Busse, by warranty deed, conveyed to this defendant the above-described real estate"; that

"* * * he and the said defendant lived together continuously upon and occupied the above-described lands and premises subsequent to the execution of the said warranty deed until on or about the 31st day of December, 1929; that at all times subsequent to the execution of the said warranty deed by this plaintiff, as aforesaid, plaintiff has paid all taxes upon such premises and has paid for all improvements and constructions made thereon during such time, including the erection and construction of a very expensive residence, he and the said defendant at all times since the execution of such warranty deed living upon such premises and occupying the same as father and son, as aforesaid, this plaintiff never suspecting or suspicioning that the said son, this defendant, had any other intention or motive or purpose of and concerning such premises other than recognizing both the legal and equitable title to such premises in this plaintiff, until sometime during the month of March, 1929, when this defendant and this plaintiff executed a certain mineral deed to royalty rights in and upon such premises and said defendant appropriated the full consideration thereof, the sum of $8,000 to his own use, and this plaintiff was compelled to institute suit against this defendant in the district court of Oklahoma county, state of Oklahoma, on the 24th day of May, 1929, in order to enforce his rights with respect to the consideration arising from the sale of such royalty interests in said lands.

"That from and after the execution of the said royalty deed upon the said premises, the said defendant, upon numerous oc-

casions, expressed to this plaintiff that he was not going to reconvey the said premises to this plaintiff, but that this plaintiff did not and could not believe that the said defendant was expressing his real intentions not to reconvey until on or about the 31st day of December, 1929, this defendant cursed and abused this plaintiff and told him to get off of said premises, and that he would not permit him to live thereon, but was going to put him in the poorhouse, and would never reconvey said premises to him; but that this plaintiff defied the defendant to remove him from said premises and then and there told and informed this defendant that he would not permit him to live longer upon such premises with this plaintiff"

—and that "there was never any intention on his part to pass ownership of said property to this defendant; and that it was always his intention that the said defendant was to retain only the legal title to such property, and that for only such time until plaintiff demanded a reconveyance of such real estate to him, which was at all times known to defendant, and which demand he has made, as aforesaid, with the results aforesaid."

In his answer the defendant admitted the execution of the deed and interposed as a defense to the action the statute of limitations. In an amendment to his answer he denied that the deed was executed by the plaintiff for the reasons stated by the plaintiff, and he alleged "that the plaintiff was frightened because of having executed said builders' bond and was afraid he would lose the land in controversy, and one reason that he conveyed said farm to this defendant was to escape any liability on said builders' bond by placing the title to said farm in this defendant," and

"* * * that this defendant was then about 27 years of age, and was single and living and working upon said land and had been for several years while the plaintiff was working at his trade; that the wife of the plaintiff, the mother of this defendant, kept the home, and this defendant did all the farm work and conducted the farm while the plaintiff worked at his trade; that when the plaintiff was so frightened because of being on said bond, and said that he wanted to convey said land to this defendant in order to escape the liability thereon, this defendant told him in substance that this defendant was a grown man and could not afford to stay upon said farm and work it without some arrangement for his compensation; that thereupon the plaintiff in substance said to the defendant that he, the plaintiff, had never farmed in his life, but had always worked at his trade and always would, and that if this defendant would stay at home and not get married and give his time and labor to working said farm, that

the plaintiff and the mother of defendant, would convey said farm to this defendant with the understanding that in the old age of the plaintiff, and the mother of this defendant, that this defendant would provide for their necessities and care for them as long as they lived; and stating that a further consideration of said conveyance was the love and affection of the plaintiff and the mother of this defendant for this defendant; and that therefore, the plaintiff had three objects and purposes in mind when he conveyed said farm to this defendant, to wit: To escape liability on said bond, and to provide for the care and maintenance of himself and his wife so long as they might live, and also to express his love and affection for defendant; that this defendant fully agreed so to do, and pursuant to the promises of this defendant to take care of his mother as long as she lived and also of the plaintiff as long as he lives, the plaintiff joined by the mother of this defendant, executed the deed in controversy and delivered the same to this defendant and this defendant placed the same on record as alleged by the plaintiff.

"That the mother of this defendant died in said home on the 26th day of April, 1928; that during the 20 years of her life following the execution of said deed, this defendant gave her the kindest personal attention and supported her; that during the last three years of her life, defendant's mother was a confirmed invalid and confined most of the time to her bed; that she required constant nursing and care, and that this defendant was her sole and only nurse, and administered personally to her every physical want and comforted her until the hour of her departure; that, in addition thereto, this defendant performed all the labor on said farm and ran and conducted the same until the present year, and that the plaintiff worked at his trade and contributed some money to the support of the family; that this defendant has never married and kept his promises to his father and mother; that prior to the sale of any mineral rights in said farm, this defendant out of his own earnings and income from said farm, supported his mother and maintained said household, except that plaintiff contributed some amounts out of his wages.

"That at the time said farm was conveyed to this defendant, it was subject to a $400 mortgage, and that defendant sold a span of mules which he had raised on said farm and other property and paid off said mortgage; that said farm was a poor old blackjack farm and was only worth the sum of $800 at that time; that from the date of said deed in 1908, until about May 25, 1929, the plaintiff never at any time demanded a conveyance of said real estate from this defendant to the plaintiff, and never hinted at such a thing, or never claimed or insinuated that this defendant was not the absolute owner in fee simple in said real estate; that a few years ago, this

defendant leased said land for oil for a small bonus and took and received the bonus, and that the plaintiff had full knowledge that he did so, and made no—but told and stated to the lessees that this defendant was the absolute owner of said farm; that thereafter this defendant leased said farm twice and received all benefits therefrom and that plaintiff never claimed any of the benefits nor made any objection, and told and stated again to the lessee that said farm belonged to this defendant; that in March of 1929, this defendant sold 40 acres of royalty in said farm for $8,000, and at the time, the plaintiff told and stated to the purchasers that he would like to have some of the money for his own personal use, which this defendant alleges is in keeping with the promises of this defendant to support him for the rest of his life; that this defendant did not refuse to give him all the money he needed for his support out of said funds, and asked him to go to town and get the money, but the plaintiff failed so to do.

"That in May, 1929, the plaintiff concluded that he would try to recover the title of said land from this defendant and this was the first time, since the execution of said deed, that he had ever demanded or asked to have the title to said land from this defendant; that this defendant offered to pay him all the funds he needed for his own support, but, nevertheless, the plaintiff filed an action in the district court of Oklahoma county, Okla., entitled Gus Busse. Sr., v. Gus Busse Jr., being cause No. 58894, on May 24, 1929, in which he asked that this defendant be enjoined from disposing of said farm and from disposing of money in his hands; that in said cause, the plaintiff did not ask for said farm to be conveyed by this defendant to the plaintiff. but only asked, according to the agreement between the plaintiff and defendant, that the defendant be restrained from disposing of said farm and pay the plaintiff certain sums of money for his own personal use; that the defendant had been at all times ready and willing so to do, and that said cause was settled and dismissed by the plaintiff with prejudice, a copy of which settlement is hereto attached, marked exhibit 'A' and by this reference made a part hereof, and that this defendant paid to the defendant. the sum of $3,750 as shown therein. which was all and much more than the funds needed and necessary for the plaintiff's support: and that the plaintiff was satisfied at that time, and dismissed said cause and went back to live with this defendant on said farm; that the plaintiff is therefore estopped by his laches and by ratification both in court and out from taking any other position than that this defendant is the absolute owner of said land: that said plaintiff is estopped by more than 20 years of peaceful and absolute ownership of said farm by this defendant, without raising his voice or protesting in any manner against the conduct of this defendant, or

to question the validity of said deed, and that he is estopped by dismissing said case in this court with prejudice from maintaining the present action.

"This defendant specifically denies that at the time said deed was executed and delivered to this defendant, this defendant promised to convey said-real estate back to the plaintiff, and specifically denies any pretended allegations of fraud laid in the pleadings of the plaintiff against this defendant, and further says that if there was any fraud, or false promises, which this defendant specifically denies, that the plaintiff has waived all of said fraud by his continuous consent and assent of the absolute ownership of said farm by this defendant; that the plaintiff has known at all times, since the execution of said deed, that this defendant claimed to be the absolute owner of said farm and did not intend to ever convey the same back to the plaintiff, and never demanded the same until 1929 as aforesaid.

"Defendant avers that during the last several years, and particularly since the death of the mother of the defendant, the plaintiff has been very quarrelsome and abusive toward this defendant, and has called defendant all manner of vile names and threatened to shoot this defendant and kill him and has carried on such course of conduct to such extent since he lately planned to recover said farm, that he has driven this defendant from his home, and because of the misconduct of the plaintiff, so as aforesaid this defendant left said home, and because of the threatened violence of the plaintiff, and left in December of 1929, and still remains away."

The trial court rendered a judgment canceling the deed, and from that judgment the defendant appealed to this court. The defendant contends that:

"The judgment of the said court is contrary to the law, contrary to the evidence, and the judgment and decree of the court is not sustained by the evidence."

In support thereof he calls attention to certain allegations made by the plaintiff in his original petition.

The second amended petition was complete within itself and the original petition was not made a part thereof. The original petition was before the court only as evidence in the case. The correct rule is stated in Jones' Commentaries on Evidence, vol. 2, p. 512, sec. 273, from which we quote the following:

"It will be observed that the following distinctions exist between the pleadings upon which the case is tried and those that have been superseded. The former is before the court and jury of necessity, without

offer, not as evidence, but to show the issues to be tried; and admissions made therein are taken as true, and conclusive against the party making them. The latter is not necessarily before the court and jury, and, if before them, is only as evidence, is not conclusive, and may be shown to have been made inadvertently, or by mistake, or may be contradicted or explained. Being only evidence, and subject to explanation, it seems that it should be introduced as any other evidence, and, unless so introduced, should not be considered. To hold otherwise is to permit a party to spring a surprise upon his adversary, by presenting the admissions when the opportunity to explain has passed."

See, also, Jones' Commentaries on Evidence (2d Ed.) vol. 3, 1836, sec. 999.

In Lane v. Choctaw, O. & G. Ry. Co., 19 Okla. 324, 91 P. 883, this court held:

"Where an amended petition is filed in a cause, and no part of the original petition is referred to or adopted into the amended petition, such original petition is superseded, and is no part of the record, and, while it may be introduced in evidence by the adverse party, the same as any other writing signed by the party, subject to be explained, its contents cannot be considered upon the trial either as a part of the record or as admissions of the plaintiff, unless introduced in evidence."

See, also, Republic Nat. Bank of St. Louis v. First State Bank of Oilton, 110 Okla. 299, 237 P. 578, wherein this court held:

"Matters of defense set up in an answer which has been superseded by an amended answer, complete within itself, and which does not make the original answer a part thereof, by reference or otherwise, are not conclusive upon the defendant, but may be introduced in evidence as admissions against interest, subject to be denied or explained by the defendant, and the question raised between the allegations in the original answer and the testimony denying or explaining such allegations is a question of fact for the jury."

The plaintiff contends that the allegations contained in the original petition, upon which the defendant relies, were made inadvertently and by mistake. The defendant contends that "He who comes into a court of equity must come with clean hands," and that under that maxim he should prevail. We do not consider it necessary to review the authorities cited by the defendant in support of that contention, for the reason that those authorities are not applicable to the facts shown by the record in this case. The trial court, with full knowledge of the equitable principles involved, heard all of the evidence and rendered the judgment. Thereby it found that the allegations of the original petition had been sufficiently explained, and that the parties should not be left in the position in which they have placed themselves with reference to title to the land. Such is the effect of the judgment. We cannot say that that judgment is against the clear weight of the evidence.

The defendant contends that:

"Said court erred in overruling the plea and defense of the plaintiff in error, of the statutes of limitation of the state of Oklahoma, against the defendant in error's cause of action.."

In Depuy v. Selby, 76 Okla. 307, 185 P. 107, this court, commenting upon this section of the law, said:

"Under the provisions of the statute, supra, the limitation provided therein starts to run, not necessarily from the date of the commission of the fraud, but from the discovery thereof, which makes an exception to the rule at common law. In any case, where an action is based upon fraud, and as a defense thereto the statute of limitation is urged, it then becomes a question of fact to be determined when the fraud relied upon was discovered."

In Clover, Adm'x, v. Neely, 116 Okla. 155, 243 P. 758, this court held:

"Under paragraph 3 of section 185, Comp. Stats. 1921, providing that where relief is sought on the ground of fraud, the cause shall not be deemed to have accrued until the discovery of the fraud, an action brought more than two years from the time the alleged fraud was committed is not barred where the defrauded party has been tolled along and prevented from discovering the fraud by the representations and statements of the other party.

"When a relation of trust or confidence exists. making it the duty of defrauder in the trust capacity to disclose the true state of facts, the defrauded party, is not charged with constructive discovery of the fraud on account of the facts being a matter of public record."

See, also, Farmers' State Bank of Ada v. Keen, 66 Okla. 62, 167 P. 207.

In Bilby v. Morton, 119 Okla. 15, 247 P. 384, this court held:

"The question as to when fraud is discovered, or could, with reasonable diligence, have been discovered, under the third subdivision of section 185, Comp. St. 1921, is one of fact to be determined from the relation of the parties, the nature of the acts involved and all the facts and circumstances of the particular case.

"Laches is a defense only when the stockholder. with full knowledge of the facts, has delayed an unreasonable length of time in

bringing his action. These two elements, knowledge and delay, are the essential elements of the defense. Until the stockholder has full and complete knowledge of all the essential facts which would be likely to induce him to institute the action, the beginning of time from which laches will run cannot be said to commence. Endicott v. Marvel, 81 N. J. Eq. 378."

In Snyder v. Snyder, 117 N. E. 465, the Supreme Court of Illinois held:

"Where, in 1882, a mother, who was guardian of her minor children, invested their money in land, and she never repudiated nor disavowed the trust, but admitted it, and never expressly avowed that she owned the land, or claimed to own it, a suit to establish and enforce the trust, brought after her death in 1912, was not barred by laches, since the rule respecting laches is different, where the transactions occurred between strangers, and where they occurred between parent and child, who would not naturally be expected to sue each other."

Therein that court quoted from the decision in Van Buskirk v. Van Buskirk, 148 Ill. 9, 35 N. E. 383, as follows:

" '* * * What lapse of time will operate as a bar must necessarily be determined by the equitable discretion of the court, and will depend upon the nature and circumstances of each case. Lapse of time will not ordinarily be regarded as a bar, where there has been no adverse possession of the property by the nominal purchaser, and where he has not repudiated or disavowed the trust but has admitted it, and where an excuse for or explanation of the delay is furnished by the circumstances of the case or the relations of the parties.' "

Under that rule the date of the discovery of the fraud was a question of fact for determination by the trial court. We cannot say that its determination thereof is against the clear weight of the evidence.

The other assignments of error are without merit.

In Villines v. Conatser, 151 Okla. 144, 2 P. (2d) 1024, this court held:

"In a suit in equity the Supreme Court on appeal is not at liberty to set aside the findings of fact of the trial court unless, after a consideration of the entire record, it appears that such findings are clearly against the weight of the evidence. Thomas v. Halsell, 63 Okla. 203, 164 P. 458."

"It is a settled rule of this court, and one which we have reiterated and reiterated time and again, that where the evidence reasonably sustains the finding and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court. Wagg v. Herbert, 19 Okla. 525, 92 P. 250."

Finding no reversible error, the judgment of the trial court is affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., concurs in conclusion, but dissents as to the application of section 185, C. O. S. 1921. RILEY, J., absent.

Note.—See under (1) 21 R. C. L. 587; R. C. L. Perm. Supp. p. 5078; R. C. L. Pocket Part, title "Pleading," § 136. (2) 17 R. C. L. 856 et seq.; R. C. L. Perm. Supp. p. 4358; R. C. L. Pocket Part, title "Limitation of Actions," § 217. (5) 2 R. C. L. 202, 203; R. C. L. Perm. Supp. p. 377; R. C. L. Pocket Part, title "Appeal," § 172.